## THE CITY OF ATLANTA.

(District Court, S. D. Georgia, E. D. January 27, 1927.)

1. **Admiralty** ⬅⟿34—**Admiralty courts follow by analogy statutes of limitations where suit is brought.**

General rule is that courts of admiralty follow by analogy statutes of limitations of country in which action is brought.

2. **Admiralty** ⬅⟿66—**Libel in rem against vessel cannot be amended to include libel in personam, barred by limitation (Civ. Code Ga. 1910, §§ 4362, 4368).**

Libel in rem against vessel to enforce maritime lien cannot be amended to include libel in personam against owner of vessel, barred by four year period of limitations prescribed by Civ. Code Ga. 1910, §§ 4362, 4368.

3. **Admiralty** ⬅⟿44—**Owner's filing of exceptions to libel against vessel held not general appearance as owner, so as to entitle amendment to include proceeding in personam, barred by limitation (Civ. Code Ga. 1910, §§ 4362, 4368).**

Though owner's filing of exceptions to libel against ship were equivalent to filing of demurrer, which is equivalent to general appearance, such general appearance was in behalf of ship, and not of owner, and did not authorize amendment of libel to include proceeding in personam against owner, barred by limitation under Civ. Code Ga. 1910, §§ 4362, 4368.

**4. Maritime liens ⬉64—That services might have been furnished on credit of cargo does not destroy force of allegation that they were furnished on ship's credit.**

That services on which libel against vessel was based might have been properly furnished to or on credit of cargo does not destroy force or completeness of allegation that they were necessaries of ship, and were furnished on its credit.

**5. Maritime liens ⬉64—Allegations that lighterage was furnished on credit of vessel held defective, in failing to show authority of persons making contracts and facts establishing vessel's liability.**

Allegations of libel in rem against ship that libelant rented lighters to ship on credit of vessel, failing specifically to state precise connection of persons who made contract for rental, or facts establishing contract and liability of vessel, held too vague and indefinite, and mere conclusions of pleader.

**6. Admiralty ⬉60—Foreign statute, pleaded in libel against vessel, as to debtor's liability for obligations, will not be stricken, being harmless.**

Provision of foreign statute, pleaded in libel against vessel for supplies and services furnished in foreign country, that a debtor is liable for fulfillment of all his obligations with all his present and future property, will not be stricken, even if it states a principle universally recognized, since it is not harmful.

**7. Admiralty ⬉60—Foreign law, relating to liability of owner and agent of vessel for captain's contracts set out in libel against vessel for supplies furnished on credit of vessel, will be stricken.**

Foreign statutes relating to liability of owner and agent of vessel for captain's contracts, set out in libel in rem against vessel for supplies and services furnished vessel in foreign country, will be stricken as establishing no liability of ship, especially where obligations on which libel is founded were not contracted by captain.

**8. Admiralty ⬉60—Foreign statutes, providing that "commercial transactions" shall be governed thereby, pleaded in libel for services in unloading vessel, will be stricken, as not including such services.**

Provision of Cuban statutes, pleaded in libel against vessel for services in unloading vessel, that commercial transactions, whether executed by merchants or not, shall be governed thereby, will be stricken, since, in absence of further quotation of provisions showing what constitutes "commercial transactions," they cannot be held to include services in unloading vessel.

**9. Admiralty ⬉60—Allegation that services were procured for benefit of vessel by vessel's representative, acting in conjunction with captain, will be stricken from libel as vague and indefinite.**

Allegation in libel against vessel that lighters, tarpaulins, and tugs were procured for use of vessel by certain person as agent, consignee, and representative of vessel, for benefit of vessel and her owner, "acting in conjunction with the captain of said steamship," held vague and

indefinite, and exception thereto will be sustained.

**10. Admiralty ⬉60—Allegation of libel that captain exhibited cables, purporting to come from owner, authorizing him to procure instrumentalities to unload cargo, will be stricken as vague and indefinite.**

Allegation of libel that lighters, tarpaulins, vessel, that captain exhibited to certain person cables or other writings purporting to come from owner, authorizing him to procure whatever instrumentalities might be necessary to unload cargo, will be stricken as too vague and indefinite, because of use of word "purporting," and in absence of allegations that captain made contract on authority of such cables or writings.

**11. Customs and usages ⬉18—Local custom cannot sustain libel for services and supplies, in absence of allegation that owner or captain knew thereof.**

Local custom, pleaded in libel for services and supplies furnished vessel in foreign port, cannot sustain libel, in absence of allegation that owner or captain knew of such customs.

**12. Maritime liens ⬉64—Allegation of libel that lighters and tugs were rented to vessel on order of certain person held insufficient, as failing to show his authority.**

Allegation, in libel for services in unloading and tugs were rented to vessel on request and order of certain person, to whom libelant was directed to go by captain of vessel, held insufficient, as failing to definitely show relation of such person to ship and cargo, and his authority to bind ship and owner.

**13. Admiralty ⬉60—Allegation of libel, that certain person had instructions from captain to procure libelant's lighters, tarpaulins, and tugs to unload vessel, held too indefinite.**

Allegation on information and belief, in libel for service and supplies furnished vessel in foreign port, that certain person had instructions from captain of vessel to procure libelant's lighters, tarpaulins, and tugs to discharge cargo of steamship, held insufficient, in failing to show authority or relation of such person to ship or owner, or to show whether contract made by him was made under instructions and authority of captain or otherwise.

In Admiralty. Libel by the Compania de Flete y Remolque against the steamship City of Atlanta, her engines, tackle, etc., claimed by the Ocean Steamship Company of Savannah. On exceptions to libel as amended. Exceptions sustained in part, and in part overruled.

See, also, 17 F.(2d) 308.

Anderson, Cann & Cann, of Savannah, Ga., for libelant.

Lawton & Cunningham, of Savannah, Ga., for claimant.

BARRETT, District Judge. The original libel was against "the steamship City of Atlanta, her engines, boilers, tackle, apparel,

and furniture, and against all persons intervening for their interests in said steamship in a cause of contract, civil and maritime," and was filed in this court on June 29, 1921. The services for which compensation is sought were rendered in the port of Havana, Cuba, in August and September, 1920; the last item being October 6, 1920.

Upon exceptions this court decided on September 16, 1924 (17 F.[2d] 308): (1) That the services rendered were of a character to establish a maritime lien; (2) that the law of the republic of Cuba governs; (3) that the law of Cuba pleaded gave a right of attachment or proceeding in rem against the vessel, and that such a right of attachment creates a right to libel in a court of the United States; (4) that there was no right to a lien under the general maritime law or under the act of Congress of the United States; and (5) that it was inferable that the entire law of the republic of Cuba as to maritime liens had not been pleaded, and opportunity was afforded libelant to make the appropriate amendment.

The amended libel was filed in this court on December 15, 1924, and was brought, not only against the steamship City of Atlanta, but "against the Ocean Steamship Company of Savannah," averring that such company "is a corporation created by, organized and existing under the laws of, the state of Georgia, with an office and place of business at Savannah, Ga.," and that it was at all times mentioned the owner of the City of Atlanta. A further amendment to this libel was filed on April 9, 1925. Exceptions were filed to the libel as amended.

[1] 1. It seems appropriate to dispose first of that exception which challenges the right to now bring suit in personam against the Ocean Steamship Company of Savannah. The general rule is firmly established that courts of admiralty follow by analogy the state statutes of limitations.

"Prior to recent acts of Congress, there was no statute of limitations in admiralty, though the courts of admiralty in their discretion have commonly applied the analogy of the state statute of limitations." Benedict on Admiralty (5th Ed.) § 463.

"Semble, the statute of limitations is followed by analogy in admiralty, as in equity, where no special equitable reasons exist against its application." Scull v. Raymond (D. C.) 18 F. 547.

"A claim in admiralty, which would be barred at law by the statute of limitations, is barred, by analogy, on the ground of laches." Southard v. Brady (C. C.) 36 F. 560.

In the body of the opinion, in Nesbit v. The Amboy (D. C.) 36 F. on page 926, we find: "But the policy of statutes of limitation as statutes of repose must be respected in courts of admiralty as much as in courts of common law. In the careful brief furnished by the libelant no case is cited where any suit has been sustained after the lapse of the statutory period."

To the same effect see Davis v. Smokeless Fuel Co. (D. C.) 182 F. 1004; Nolte v. Hudson Nav. Co. (C. C. A.) 297 F. 758, 764; McGrath v. Panama R. Co. (C. C. A. Fifth Cir., April 8, 1924) 298 F. 303.

"In the absence of other limitations, those of the lex fori apply." Davis v. Smokeless Fuel Co. (D. C.) 182 F. 1004, 1005.

"Therefore the statute of limitations of the country where the action is brought, and the remedy is sought to be enforced, * * * is the one which controls in the event of a conflict of laws. In other words, the lex fori determines the time within which a cause of action shall be enforced." 17 Ruling Case Law, § 49, p. 697.

[2] Under sections 4362 and 4368, Code of Georgia 1910, an action of this kind must be brought within four years from the accrual of the right of action. The date of accrual in this case could not be later than October 6, . 1920. The libel in personam against the Ocean Steamship Company of Savannah was not filed until December 15, 1924, more than four years after the date of the accrual of the right of action.

It is urged that, because a proceeding was being had in rem against the City of Atlanta, the property of the Ocean Steamship Company, within the statute of limitations, the Ocean Steamship Company had full knowledge of the claim and all the facts in connection therewith, and that this should relieve of the bar of the statute, either by analogy or by reason of laches, but no authority is cited to sustain this position. The contrary is held in Scull v. Raymond (District Court of New York, in 1883) 18 F. 547. On page 553 it is said: "The libelant, it is true, was during most of this time diligently pursuing his remedy in rem; * * * but this has never been held to be a ground for the extension of the statutory period of limitation in regard to remedies in personam."

Authorities are cited by libelant showing that the statute of limitations did not apply under the principle of laches, even though the libel had been sued out a considerable time after the expiration of the statute of limitations. In these cases peculiar facts were pleaded and disclosed as to why the libelant

was not guilty of laches, as, for instance, in our Fifth Circuit, in the case of The Alabama (C. C. A.) 242 F. 431.

It is also urged that, because the rule as to amendment is exceedingly liberal in courts of admiralty, this amendment making a new party should be allowed. There is no question as to such liberality, but it has not been shown that this extends to the allowance of making a new party after the statute of limitations had expired.

[3] It is further urged that, because exceptions were filed to the original libel by the Ocean Steamship Company, as claimant, this was equivalent to a general appearance by such company, and that it cannot be heard now to object to the amendment seeking to bring a proceeding in personam as being too late. While exceptions are equivalent to a demurrer, and the filing of a demurrer equivalent to a general appearance, this principle produces only a general appearance in behalf of the ship and not the owner. There was nothing in the original libel to indicate a claim against the Ocean Steamship Company in personam. It is difficult to conceive how the filing of an intervention in behalf of the ship can be construed as a general appearance in a proceeding that did not exist and was not indicated.

The exception, therefore, to the libel, as amended, proceeding against the Ocean Steamship Company of Savannah, is sustained, and the libel is dismissed as against said steamship company.

2. Exceptions 1, 2, 3, 4, 5, 6, and 7 are to the effect that no lien on the vessel is conferred by Cuban laws; that merely a right to attach the vessel in the port of registry is conferred by such laws; that the laws of Cuba quoted do not purport to give to a resident of Cuba the right to proceed by attachment against a foreign vessel in a court foreign to the republic of Cuba; that the admiralty courts of the United States provide their own remedies and the laws of Cuba do not govern; that unless the libelant has a lien it cannot prosecute a libel in rem in the United States; that the vessel in this case was seized by virtue of a libel in rem, under whose allegations libelant was entitled to a maritime lien on the vessel, and it is not claimed in the amended libel that libelant had such a lien; and that libelant cannot proceed by attachment against the property of the Ocean Steamship Company of Savannah in the Southern district of Georgia, because such company is a resident of the Southern district of Georgia.

These matters have been determined adversely to exceptor in the previous opinion of this court. An authority in addition to that there cited is The Kaiser Wilhelm II (D. C.) 230 F. 717.

[4] 3. Exception 9 is also disposed of adversely to exceptor in the previous opinion of this court. The fact that the services upon which the libel is based might have been appropriately furnished to, or on the credit of, the cargo, does not destroy the force or completeness of the allegation that they were necessaries of the ship and were furnished on the credit of the ship.

[5] 4. In paragraph 6 of the libel it is averred that "libelant rented to the said steamship the necessary lighters," etc., and in paragraph 7 that the lighters, etc., "were rented to the said vessel on the credit of said vessel," and in paragraph 8 that the lighters, etc., "were furnished to the said vessel on the credit of said vessel." Challenge is made by exceptions that these allegations are vague and indefinite, and are mere conclusions of the pleader, and that there should be stated specifically the precise connection of the persons who may have made the contract of rental, or the facts which establish such rental contract and liability of the vessel.

Notwithstanding the subsequent allegations as to F. Suarez & Co. and Armenio La Villa and B. L. Stafford and the captain, these exceptions are well taken, and the libel should be amended accordingly.

[6] 5. The exception calling for the striking of article 1911 of the Cuban Civil Code, that "a debtor is liable for the fulfillment of all his obligations with all his present and future property," is overruled. While it may state a principle universally recognized, it is not harmful, and is really no more comprehensive than the last paragraph of article 584 of the Cuban Code of Commerce, that "for debts of any other kind whatsoever, not included in the said article 580, the vessel can only be attached in the port of her registry."

[7] 6. The exceptions urge that articles 586 and 588 of the Cuban Code of Commerce should be stricken. They read as follows:

"Art. 586. The owner of a vessel and the agent shall be civilly liable for the acts of the captain and for the obligations contracted by the latter to repair, equip and provision the vessel, provided the creditor proves that the amount claimed was invested therein. By agent is understood the person intrusted with the provisioning of a vessel, or who represents her in the port in which she happens to be."

"Art. 588. Neither the owner of the vessel not the agent shall be liable for the obligations contracted by the captain if the lat-

ter exceeds his powers and privileges which are his by reason of his position or should be granted him by the former. However, if the amounts claimed were made use of for the benefit of the vessel, the owner or agent shall be liable."

These exceptions are sustained. Such articles establish no liability upon the ship, but merely upon the owner of a vessel and the agent. It must be recalled that this is not a proceeding against the owner, for such attempted proceeding has been held barred, and the only proceeding now left is that against the ship. Even when the captain has exceeded his powers, and "the amounts claimed were made use of for the benefit of the vessel," it is the owner or the agent, and not the vessel, which is liable.

Further reasons are that it does not appear that the obligations upon which this libel is founded were contracted by the captain, nor does it appear that they were to "repair, equip and provision the vessel." They were merely for the purpose of unloading the cargo.

[8] 7. A portion of article second of the Cuban Code of Commerce is set forth in the libel as follows:

"Commercial transactions, be they executed by merchants or not, whether they are specified in this Code or not, shall be governed by the provisions contained in the same; in the absence of which, by the commercial customs generally observed in each place; and in the absence of both, by those of the common law. Commercial transactions shall be considered those embraced in this Code and any others of a similar character."

An exception urges that such section be stricken. It might be that, if such Code were further quoted, showing what specifications of "commercial transactions" are contained in such Code, the opinion now entertained by the court would be altered. The ruling must be according to the "lights before me."

"Commercial transactions," as here used, do not embrace the services upon which this libel is founded. I am not unmindful that with a different context they might embrace any act connected with commerce, and that under certain conditions they might be synonymous with "maritime transactions." 12 C. J. 141. The ordinary meaning is more limited, and the context makes clear that the use here is in the limited sense. It is contemplated that the "transactions" are those usually had between "merchants"; that they are either specified in such Code, or are "of a similar character," and no specification is quoted indicating that services in unloading a vessel

are embraced; and that in the absence of specification or commercial customs the common law shall control, and rights in admiralty are not founded in the common law.

Paragraph 10 of the libel is stricken. If libelant desires to amend by setting forth other portions of such Code as would indicate that the foregoing view is erroneous such amendment will be allowed.

[9] 8. Paragraph 13 of the libel is as follows:

"When said steamship City of Atlanta entered the port of Havana, Cuba, on or about June 30, 1920, her captain consigned the said vessel to F. Suarez & Co., and said consignment was duly transferred to Armenio La Villa on or about August 6, 1920, who thus became the agent, consignee, and representative of the said steamship and her owner at the port of Havana. The lighters, tarpaulins, and tugs were procured for the use of the said steamship by the said Armenio La Villa, as the agent, consignee, and representative of the said vessel, for the benefit of the said steamship and her owner, acting in conjunction with the captain of said steamship."

The challenge to this paragraph is overruled, except that portion of it which challenges the phrase "acting in conjunction with the captain of said steamship," as being vague and indefinite. Claimant is entitled to the precise averment as to what is meant by this phrase. This portion of the exception is sustained.

In thus overruling the exception to paragraph 13, it is not intended to be held that the authority claimed therein to arise from the consignment of the vessel by the captain does in fact arise. The effect of the consignment, if proven as alleged, will be subject to construction at the time of the trial.

[10] 9. Paragraph 14 of the libel is as follows:

"Upon information and belief, libelant avers that said captain of said steamship exhibited to the said Armenio La Villa cables or other writings, purporting to come from the owner of the said steamship, authorizing or directing him to procure whatever instrumentalities which might be necessary for the unloading and landing of the cargo from the said steamship, and the prompt dispatch of the said steamship from the port of Havana, in order that she might proceed on her voyages with the least possible delay."

This paragraph is too vague and indefinite to permit it to stand as it is. It is significant that the allegation is not that these "cables or other writings" actually came from the owner of the steamship to the captain, but

that they were *"purporting* to come from the owner of the said steamship." The allegations herein are not coupled with any other allegations to the effect that the captain made a contract with La Villa upon the authority of these "cables or other writings." La Villa's connection with the transaction is definitely averred to arise by reason of the fact that he was the transferee of the consignment of the vessel made by the captain of the vessel to F. Suarez & Co., and thus became the agent, consignee, and representative. If it is claimed that these writings came from the owner of the vessel, and that a contract which would bind the vessel was made or confirmed with La Villa on the faith of them, and they were exhibited to La Villa, the allegation as to them would be entirely appropriate, or, if it is intended to bind the vessel by any act of the captain himself, whether done under an authority actually received or by reason of a misrepresentation as to such alleged authority, they would be competent. In the absence of appropriate amendment, the paragraph will be stricken.

[11] 10. Paragraphs 15 and 16 of the libel aver that certain customs prevailed in Havana, whose enforcement would sustain the libel; but there is no allegation that the owner or the captain knew of such customs. These paragraphs will be dismissed, unless amended so as to meet the requirements of law as herein interpreted.

The custom therein averred is limited to Havana, and is a local custom. "Evidence of a local custom is not admissible, unless it is shown to be known to both parties." Chateaugay Ore Co. v. Blake, 144 U. S. 476 (2), 12 S. Ct. 731, 36 L. Ed. 510. See, also, Savannah Bank & Trust Co. v. McQueen, 149 Ga. 302 (2), 100 S. E. 33, and citations therein.

"If a custom is not general in character, but is local, it is binding only upon persons who have knowledge thereof, express or implied. This is especially true in the case of persons residing in foreign lands and never within the particular locality before." 27 R. C. L. p. 163.

"A nonresident will not ordinarily be presumed to have contracted with reference to a purely local usage, but must be shown to have had knowledge of it." 17 Corpus Juris, p. 462.

11. The exception to paragraph 18 of the libel is overruled.

[12] 12. Paragraph 19 of the libel is as follows:

"That the said lighters, tarpaulins, and tugs were rented to the said vessel upon the request and order of B. L. Stafford (to whom libelant was directed to go by the captain of said steamship), and of the said Armenio La Villa, the consignee of the said steamship, then and there acting on behalf of the said steamship City of Atlanta, and then and there represented and was the agent for said vessel, to enable the said steamship to discharge her cargo and proceed on her voyages, and to avoid said steamship being indefinitely detained at the port of Havana at that time."

The exception challenges the omission to aver in such paragraph or elsewhere "fully and definitely the relation of the said Stafford to the ship and the cargo, and his authority to bind the ship and the owner of the ship." This exception is sustained.

[13] 13. Paragraph 20 of the libel is as follows:

"In pursuance of such directions by said captain, the vice president and general manager of libelant saw the said Stafford, who told him to see the said Armenio La Villa, who was the officially designated agent of the ship. Libelant avers upon information and belief, that the said Armenio La Villa had instructions from the said Garfield, as captain of the said steamship, to procure libelant's lighters, tarpaulins, and tugs for the use of the said steamship to discharge her cargo."

While the challenge to this paragraph is not very definite itself, it is justified, for the reason that it does not appear in such paragraph or elsewhere who was Stafford, what was his relation to the ship or the owner, or what was his authority, and it is not clear as to whether Stafford made the statement that La Villa "was the officially designated agent of the ship," or whether this is an allegation of the libelant. Such paragraph is further vague for the reason that it does not definitely appear whether it was the intention of the pleader to allege that the contract with libelant by La Villa was made under the instructions and authority of the captain of the ship or otherwise. Such paragraph should be made more definite as herein indicated.

14. Exception 23 to paragraph 21 of the libel is overruled.

Libelant is allowed until March 1, 1927, to present any amendments in response to the foregoing opinion.