## SCHIAVONE–BONOMO CORPORATION v. BUFFALO BARGE TOWING CORPORATION et al.

### No. 87.

Circuit Court of Appeals, Second Circuit.

Dec. 29, 1942.

Rehearing Denied March 31, 1943.

John C. Crawley and Barry, Wainwright, Thacher & Symmers, all of New York City, for appellant.

Leo F. Hanan and Macklin, Brown, Lenahan & Speer, all of New York City, for appellee Schiavone-Bonomo Corporation.

Frank C. Mason and Mahar & Mason, all of New York City, for respondent-appellee Bouchard Transp. Co., Inc.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The Buffalo Barge Towing Corporation appeals from a decree in the admiralty on the ground that the claim against it was asserted too late: that is the only point involved, and it arises upon the following facts. On September 24, 1936, the Barge Corporation made a contract with the Bouchard Transportation Company to deliver four barges—two at Troy, N.Y. and two at Fort Edward, N.Y.—which the Bouchard Company should "arrange to load" with "scrap iron" to be transported to Buffalo. Two days later the Bouchard Company made a contract in precisely the same words with the libellant which had "scrap iron" to transport. The Bouchard Company tendered two of the barges to the libellant which filled them with "scrap iron"; and, on October 24, 1936, while en route for Buffalo in the Barge Canal, the tug which had them in tow brought them into collision with the abutment of a bridge and so injured them that they sank. On July 10, 1940, the libellant sued the Bouchard Company for the cost of raising the cargo; and

the Bouchard Company impleaded the Barge Corporation on August 8, 1940. Section 48(1) of the New York Civil Practice Act makes six years the period of limitation for an "action upon a contract obligation or liability express or implied"; § 48 (3) fixes the same period for "an action to recover damages for a personal injury"; § 49(6) makes three years the period for "an action to recover damages for an injury to property, or a personal injury, resulting from negligence"; and §49(7) fixes that period for "an action to recover damages for an injury to property, except in the case where a different period is expressly prescribed."

■ There being in the case at bar no circumstances to excuse the delay we follow the state statute of limitations. Nolte v. Hudson Navigation Co., 2 Cir., 297 F. 758; Marshall v. International Mercantile Marine Co., 2 Cir., 39 F.2d 551; The Sydfold, 2 Cir., 86 F.2d 611; Hughes v. Roosevelt, 2 Cir., 107 F.2d 901. Hence the question comes down to whether the libellant could have sued in the courts of New York for the same wrong. Before 1936 § 48(3) of the New York Civil Practice Act grouped injuries to property with personal injuries and made the limitation six years for both, except for personal injuries "resulting from negligence," the limitation for which § 49(6) made three years. By the amendments of that year all reference to "injuries to property" was taken out of § 48 and § 49(6) was amended by including "an injury to property." As that subdivision covered only injuries "resulting from negligence" subdivision 7 was added to § 49, which, so far as we can see, made the addition to § 49(6) redundant.

The libellant first argues that as the "scrap iron" was not itself injured, being only wetted, the suit was not to recover for an "injury to property." That phrase was defined by § 3343(10) of the old Code of Civil Procedure as "an actionable act, whereby the estate of another is lessened, other than a personal injury, or the breach of a contract." When the Civil Practice Act was enacted on May 21, 1920, the definitory section—§ 7—did not carry over this definition, but it was lifted into the General Construction Law, Consol.Laws, c. 22, where it became § 25-a. That amendment was also passed on May 21, 1920, and both it and the Civil Practice Act took effect on April 15, 1921. Section 101 of the General Construction Law provided that the Act

768

should not "affect" the Penal Law, Consol. Laws, c. 40, the Code of Civil Procedure or the Code of Criminal Procedure; but as the Civil Practice Act repealed the Code of Civil Procedure in toto—§ 1539, Laws 1920, c. 925,—the result at least verbally was that the General Construction Act "affected" the Civil Practice Act. The result is somewhat baffling. On the one hand it appears most unlikely that the general purpose had changed not to extend the definitions of the construction law to interpretations of the statute regulating civil procedure; on the other it is also strange that this particular definition should have been thought applicable to the general body of statutes—as it had not been before—but not applicable to procedure which had been its exclusive field, and where it was especially appropriate. Nor does it help to clear up the difficulty that by Chapter 11 of the Laws of 1941 § 101 of the General Construction Law—in order to eliminate "obsolete" references—was amended so as not to "affect" the Civil Practice Act, eo nomine. Out of this labyrinth we are disposed to find our way by saying that since 1920 the definition of an "injury to property" which we have quoted has not applied to the Civil Practice Act, curious as that result seems. Although we cannot therefore rely upon it, we have however no hesitation in holding that, as tabula rasa, to sink the "iron scrap" to the bottom of the Barge Canal was "an injury to property." Any distinction between damaging property physically and making is inaccessible is purely factitious; the owner will be altogether indifferent whether the expense imposed upon him arises in the repair of his property, or in regaining it from where it has been buried or drowned; his "injury" in either case is what it costs him to have it back in the condition in which it was before the wrong was done.

■ However, it does not follow because the loss sought to be recovered arose from "an injury to property," that the libellant might not declare in contract and invoke the period of six years under § 48 (1) rather than be limited to three years under § 49(6). Strictly it might be hard to spell out any contract between it and the Barge Corporation, but we assume from the conduct of the parties that one existed and we dispose of the case on the assumption that the Barge Corporation was acting as a private carrier for the libellant at the time of the loss. The courts of New York have several times decided that in the case of injuries to passengers and the like, resulting from negligence, § 49(6) applies in spite of the fact that the relation between the parties had its origin in contract. Webber v. Herkimer & M. St. R. Co., 109 N. Y. 311, 16 N.E. 358; Loehr v. East Side Omnibus Corp., 259 App.Div. 200, 18 N.Y.S.2d 529, affirmed 287 N.Y. 670, 39 N.E.2d 290; Hermes v. Westchester Racing Ass'n, 213 App.Div. 147, 210 N.Y.S. 114. Although a parallel line of cases holds that a Municipal Court has jurisdiction over such cases because the action can be brought in contract (Busch v. Interborough Rapid Transit Co., 187 N.Y. 388, 80 N.E. 197, 10 Ann.Cas. 460; Finkelstein v. Barrett, 178 App.Div. 233, 164 N.Y.S. 1021), so far as there is any conflict we regard Loehr v. East Side Omnibus Corp., supra—the last decision of the Court of Appeals—as controlling, at least as to the statute of limitations.

Two distinctions are possible between the situation before the courts in those cases and that at bar: (1) the injury here was to property; (2) it was done by a private carrier. The first of these differences is certainly not important. The courts of New York very early held that an action on the case lay against a common carrier for negligent injury to a shipper's property. Packard v. Getman, 4 Wend. N.Y., 613, 21 Ann.Dec. 166; Hallenbake v. Fish, 8 Wend., N.Y. 547, 24 Ann.Dec. 88; Scovill v. Griffith, 12 N.Y. 509. Nor is it important that the negligent bailee was here a private, rather than a common, carrier. Although all the New York decisions were in actions against common carriers, by the common law of the state the shipper had the same choice of suing a common carrier in contract or in tort that he had against a private carrier. Weed & Weed v. Saratoga & Schenectady R. R. Co., 19 Wend., N. Y., 534. The decisions we have cited did not in any sense turn upon the fact that the defendants were common carriers; but upon an interpretation of § 49(6) which made determinative, not the origin of the liability, but the character of the loss. In substance they held that the plaintiff could not extend the period of limitation by declaring upon his contract under § 48(1) rather than upon his loss under § 49(6). Such an option might indeed have been open to him in earlier times, but it would be woefully anachronistic today. Indeed even historically it might have been a hard position to maintain, because there is no doubt that a shipper might sue a

private carrier without alleging any promise; as we should now say, he was not obliged to sue in contract. Symons v. Darknoll, Palmer 523. Probably that was true from the earliest times. Holdsworth, Vol. III, pp. 429–434.

Finally, the action is necessarily for "an injury to property resulting from negligence," because a bailee is not otherwise liable anyway. Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 110, 62 S.Ct. 156, 86 L.Ed. 89. Since § 49(6) certainly defeats the suit, we need not consider the purely verbal question whether § 49(7) would also do so. Section 49(6) does not prescribe a "different period" from that in § 49(7) and perhaps both should be held applicable; but we merely hold that the libel was barred under § 49(6).

Decree reversed; libel dismissed.