### REDMAN v. UNITED STATES et al.

United States District Court
S. D. New York.
Dec. 13, 1948.

Nathan Baker, Hoboken and New York City, for libellant.

John F. X. McGohey, Haight, Deming, Gardner, Poor & Havens, J. Ward O'Neill and John J. Foley, New York City, for United States of America and Danish Ship Operating Corp.

W. Dale Williams, Michael A. Hayes, New York City, for United Fruit Co.

Galli & Locker, Patrick J. McCann, New York City, for Chelsea Ship Repair Co.

Everett W. Bovard, New York City, for Turbine Engineering Corp.

Townley, Updike & Carter and William T. Bresnahan, New York City, for Robert Banks & Co.

BONDY, District Judge.

■ Courts of admiralty have long applied the Equity doctrine which demands that claims must be prosecuted within a reasonable time. While the determination of what is a reasonable time under the circumstances is left to the discretion of the court, analogous State statutes of limitation are, in the absence of special circumstances, held controlling. Marshall v. International Mercantile Marine Co., 2 Cir., 39 F. 2d 551; The Sydfold, 2 Cir., 86 F.2d 611; Hughes v. Roosevelt, 2 Cir., 107 F.2d 901; Schiavone-Bonomo Corporation v. Buffalo Barge Towing Corp., 2 Cir., 132 F.2d 766.

■ Libellant was injured July 25, 1944, but did not make his claims against Turbine Engineering Corporation and United Fruit Company until November 26, 1947, four months beyond the three year limit provided by the New York statute of limitations governing actions on claims for personal injuries resulting from negligence. New York Civil Practice Act § 49(6).

■ Libellant's claim that he did not have any notice of the possible liability of Turbine Engineering Corporation and United Fruit Company before "the latter part of 1947" and that this constitutes a special circumstance which prevents the application of laches, can not be sustained. Ignorance of facts material to a claim may preclude the application of laches. This, however, is not so when such ignorance is due to the negligent failure of the libellant to make such inquiry as the circumstances reasonably suggest. See Winn v. Shugart, 10 Cir., 112 F.2d 617, at page 622.

The claim against Turbine Engineering Corporation is based upon the duty of a contractor having control and custody of a vessel undergoing conversion to furnish to those who are employed thereon a reasonably safe place to work. If, as it is claimed, libellant did not know under whose control the vessel was at the time of the accident, reasonable diligence would have disclosed that fact long before November, 1947. Moreover, the bill for work done for Turbine Engineering Corporation in the exhibits to which libellant was referred by Robert Banks' answers to interrogatories of May 21, 1947, gave libellant notice of the identity of the general contractor more than two months before the statute of limitations expired and more than six months before he made his claim. Since there is nothing to excuse the delay, the libel against Turbine Engineering Corporation must be held barred by laches.

The libel against United Fruit Company is also barred by laches since the record does not support libellant's claim that before October 3, 1947, there was nothing to put him on notice that the scaffold may have been damaged during the berthing operation on the morning of July 25, 1944, or that such operation was performed at the direction and under the control of United Fruit Company.

Irrespective of whether libellant on May 9, 1946 had constructive notice of the contents of the filed interrogatories and answers thereto served on corespondents in the action, libellant on May 21, 1947 had actual notice of Walter's statement indicating his belief that the scaffold was damaged during the berthing operations since at that time he was served with Robert Banks' answers to libellant's interrogatories which specifically referred him to Walter's statement. See Livingston v. Maryland Ins. Co., 7 Cranch 506, at page 537, 11 U.S. 506, at page 537, 3 L.Ed. 421.

Walter's statement should have put libellant on inquiry to determine who moved the vessel. Libellant could not reasonably have believed that the vessel could only have been moved by one of the original parties. Obviously respondent United States did not in its capacity as owner of the Leonatus move the vessel, since it had

assigned her to the Danish Ship Operating Corporation. The Danish Ship Operating Corporation was not likely to have been the one to have moved the ship, since it was undergoing a general reconversion, was a "dead ship" and had, according to libellant, no crew on board. The general contractor in charge of the conversion and the operator of the pier, or those most likely to have responsibility for the shifting of the ship, were not parties to the action.

The original libel was based on the theory that the scaffold had been negligently constructed and maintained. The only reasonable action after being informed that the scaffold may have been damaged during the shifting of the vessel would have been a further investigation of the facts, which would have revealed that United Fruit Company had charge of the berthing operation.

Yet at no time did libellant make any effort to determine who was responsible for the shifting of the vessel on the morning of July 25, 1944, and he impleaded United Fruit Company on November 26, 1947, only after respondents Rissell and McNeil had on October 3, 1947, volunteered the information that United Fruit Company had moved the ship.

In delaying suit until six months after the date on which reasonably diligent inquiry would have revealed the possible responsibility of United Fruit and four months after the time limit provided by the New York statute, the libellant has been guilty of laches which can not be excused by an ignorance of facts that resulted only from his own lack of diligence. The fact that it may have been libellant's proctor and not libellant personally who was responsible for the delay in making this claim can not alter the decision. McGrath v. Panama R. Co., 5 Cir., 298 F. 303; Marshall v. International Mercantile Marine Co., supra.

Respondents did not waive the defense of laches by failing to plead it in their original answer. See Hays v. Seattle, 251 U.S. 233, at page 239, 40 S.Ct. 125, 64 L.Ed. 243; The Sydfold, 2 Cir., 86 F.2d 611; see also Page v. Natural Gas & Fuel Co., 8 Cir., 35 F.2d 462, at page 465. Nor is the delay excused by the diligent prosecution of libellant's claim against other parties. See The City of Atlanta, D.C., 17 F.2d 311; The Scull v. Raymond, D.C., 18 F. 547, at page 553.

The court therefore reluctantly concludes that the libel against Turbine Engineering Corporation and United Fruit Company must be dismissed on account of libellant's laches.

The issues of fact and law in the above entitled suit having duly come on to be heard on the pleadings and proofs of the parties and due deliberation having been had, I now find and decide as follows:

### Findings of Fact

1. Libellant, a rigger, was injured July 25, 1944, on board the steamship Leonatus, which was undergoing conversion from a cargo to a refrigerator type vessel, while it was moored alongside Pier 9, North River, New York.

2. The Leonatus was owned by the respondent United States of America and assigned to the respondent Danish Ship Operating Corporation under a standard General Agency Agreement.

3. The respondent Turbine Engineering Corporation was engaged in making the conversion as the general contractor.

4. The respondent United Fruit Company was engaged by the War Shipping Administration under a special contract to supervise the installation of the refrigerating equipment, and also the berthing of the vessel, which was moored to its pier.

5. Turbine Engineering Corporation engaged respondent Chelsea Ship Repair Company as subcontractor to do the carpentry work.

6. Turbine Engineering Corporation engaged respondent-impleaded Robert Banks & Company, employer of libellant, to do the rigging.

7. Several weeks prior to the accident, Chelsea Ship Repair Company had properly constructed a wooden scaffold on the inshore aft part of the vessel.

8. At about 8:20 A.M., July 25, 1944, libellant, in the course of his employment, after stepping on this scaffold, walked about ten feet towards its forward end, when the plank on which he was standing tipped, and he slipped and fell fifteen feet to the deck below.

9. At 8:00 P.M., July 24, 1944, the day preceding the accident, the scaffold was in a safe and secure condition.

10. At about 7:00 A.M., July 25, 1944, the Leonatus, which was a "dead ship" at that time, was shifted from its berth by the United Fruit Company and tugs acting under its orders, and returned again to its berth by 8:10 A.M., before libellant or any of the other workmen went aboard to work.

11. A mooring winch was located at the fore end of the scaffold. The mooring line, which was made fast to the dock, ran underneath the scaffold.

12. At the time of the accident the scaffold was insecure, cross-pieces were detached from the scaffold and a stringer which had been placed across the end of the scaffold to keep the plank from tipping, was found on the deck and mooring lines, which had not been there the previous evening, were beneath the scaffold.

13. May 9, 1946, Martin Rissell, one of the copartners doing business as Chelsea Ship Repair Company, filed answers to interrogatories propounded by respondents United States of America and Danish Ship Operating Corporation. Exhibits attached to these answers included a copy of a bill for work done by Chelsea Ship Repair Company for Turbine Engineering Corporation and also included photostatic copies of written statements concerning the accident and the condition of the scaffold, made by various employees of Chelsea Ship Repair Company and Robert Banks and Company. The statement of Frank Walter, a carpenter employed by Robert Banks, set forth: "The Riggers had been using this scaffold at least three or four days before the accident. But sometime during the early hours of July 25, the boat had been moved from an outer berth to an inner berth & I believe the lines fouled in the scaffolding."

14. These answers were filed but not served on libellant.

15. On May 21, 1947, Robert Banks served and filed answers to libellant's interrogatories. In these answers libellant is specifically referred to the "Exhibits attached to the answer to interrogatories filed with this Court by respondent Chelsea Ship Repair Company in answer to interrogatories propounded by respondents United States of America and Danish Ship Operating Corp."

16. To libellant's interrogatory No. 15, addressed to respondents Rissell and McNeil, copartners doing business as Chelsea Ship Repair Company: "During 10 day period ending July 25, 1944, was the wooden scaffold in place in vicinity of rear gun mount of SS Leonatus, altered, changed or moved since its erection. If so, describe change made and by whom was it altered changed or moved," respondents answered, on October 3, 1947, "No. It was never moved or changed by the respondent but this respondent understands that the United Fruit Company caused the vessel to be shifted and this shifting operation which your respondent understands was undertaken by the employees of the United Fruit Company caused a stern line to loosen part or parts of the scaffolding."

17. Libellant did not move to implead United Fruit Company and Turbine Engineering Corporation until November 21, 1947, and did not file his amended libel naming them until November 26, 1947.

18. At the close of libellant's case respondents rested and the libel against all respondents other than United Fruit Company and Turbine Engineering Corporation was dismissed for lack of proof of the violation of any duty on their part toward libellant; and United Fruit Company and Turbine Engineering Corporation were given leave to amend their answers to plead laches and the statute of limitations.

Conclusions of Law

1. The libel against Turbine Engineering Corporation is barred by libellant's laches.

2. The libel against United Fruit Company is barred by libellant's laches.