**ANTHONY SHIPPING CO.,
LTD., Plaintiff,**

v.

**HUGO NEU CORPORATION, Defendant.**

**No. 77 Civ. 2543 (GLG).**

United States District Court,
S. D. New York.

Jan. 2, 1980.

Cichanowicz & Callan, New York City, for plaintiff, by Donald B. Allen, New York City, of counsel.

Burlingham, Underwood & Lord, New York City, for defendant, by Herbert M. Lord, New York City, of counsel.

OPINION

GOETTEL, District Judge:

This case provides a textbook example of the difference in approach in an arbitration proceeding between the commercial arbitrators and the legal arbitrator. The parties have cross-moved with respect to the arbitration award, the defendant (the prevailing party) seeking to confirm the award, and the plaintiff seeking to correct it.

Defendant was the voyage charterer of the plaintiff's vessel ANTONIOS DE-MADES. While carrying a cargo of scrap metal from the United States to Japan it was lost at sea in heavy weather in February, 1970. The charter party provided that "ninety percent (90%) of freight to be prepaid within seven days after surrender of signed Bills of Lading, . . . discountless and non-returnable, vessel and/or cargo lost or not lost. Balance payable on completion of discharge."

After the sinking of the vessel, the plaintiff, as owner, was sued by the cargo interests. This suit was successfully defended. *Yawata Iron & Steel Co. v. Anthony Shipping Co.*, 396 F.Supp. 619 (S.D.N.Y.1975), *aff'd*, 538 F.2d 317 (2d Cir. 1976). After the litigation, the plaintiff pressed the demand for payment of the retained ten percent of the freight. After the defendant's refusal to pay, and some seven years and three months after the casualty, plaintiff demanded arbitration. The defenses were two-fold:

1. Under the provisions of the charter, the final ten percent of freight had not been earned since the voyage was not completed and the cargo not discharged.

2. The claim was barred by laches.

There were three arbitrators. Two were commercial men and the third was an admiralty lawyer selected by the two commercial men. All of the arbitrators found for the defendant, but the two commercial men found for the defendant only on the grounds of laches, and the lawyer found for the defendant only on the ground that the freight had not been earned. The plaintiff says that the decision of the two commercial arbitrators on the laches issue was manifest disregard of the applicable law. It seeks to set it alone aside, which, if the other aspect of their decision concerning freight is upheld, would entitle the plaintiff to judgment in the amount of $30,450, plus interest.

The arbitrators rendered a very lucid decision in which the differing approaches are quite clearly stated. The pertinent portion of the decision reads as follows:

"DECISION

"The Panel unanimously hold that the Owner's claim should be disallowed in its entirety, but for different reasons.

*The Reasons of the Commercial Arbitrators*

"The two commercial arbitrators rest their decision on the Owner's delay in bringing its claim against the Charterer. They consider the delay of over seven (7) years from the date of the Vessel's loss to be inexcusable and in such circumstances that there need not be a showing of prejudice by the Charterer in order to sustain the laches defense.

"They view the Owner's lack of action in pursuing the claim and the unfounded pursuit of the wrong party over a substantial period of time to be wholly inconsistent with sound commercial practice and consequently the Owner must bear the consequences for its lack of diligence.

"Although the Commercial Arbitrators, in view of their decision on the time bar issue, did not need to consider the merits of the freight clause controversy, it is their view that, had the claim been asserted in a timely fashion, the freight clause should be interpreted as providing that 100% of the freight was earned on cargo being loaded. They are of the opinion that failure to include the language 'discountless and non-returnable' with respect to the 10% portion of the freight was due to oversight and that the true intention of the parties, when viewed in the context of chartering practice, was to have the full freight earned on loading.

*The Reasons of the Chairman*

"The Chairman reaches the same result but for different reasons. In his view, the Owner, while remiss in the prosecution of its claim is not barred by laches. The laches doctrine is equitable in nature, *The Key City*, 14 Wall. (81 U.S.) 653, 660 [, 20 L.Ed. 896] (1872), and therefore its application depends on the peculiar facts of each case. . . .

"On the facts of this case, the Charterer has met the first test—a delay of over seven (7) years in identifying and claiming against the proper party must certainly constitute a lack of diligence, however the facts presented here show no substantial prejudice.

\*    \*    \*    \*    \*    \*

"The Owner, however, having gotten past the laches defense, fails on the merits. The law in the United States as to the earning of freight is clear. It is that in the absence of a contractual provision to the contrary, freight is not earned until the cargo being carried is delivered to its destination. This rule obtains even where the freight is denominated as 'prepaid' and actually is prepaid. *Hellenic Lines Ltd. v. United States*, 512 F.2d 1196 (2nd Cir. 1975). The only way that the carrier can relieve itself of the obligation of delivery as a condition of earning freight is by a contractual provision which states that freight is earned prior to delivery. *Hirsch Lumber Co. v. Weyerhaeuser S.S. Co.*, 233 F.2d 791, 794 (2nd Cir. 1956), cert. denied 352 U.S. 880 [, 77 S.Ct. 102, 1 L.Ed.2d 80] (1956).

"The Charter Party here in its freight clause expresses a clear intent that the 90% portion of the lumpsum freight was to be considered earned even if the cargo were not delivered to destination . . . ."

From the foregoing, it does not appear, as contended by the plaintiff, that the commercial arbitrators knew the law with respect to laches, but intentionally misapplied it. There are two conceivable rationales for the decision of the commercial arbitrators. The first is that the length of time involved exceeded the longest possible state statute of limitations (six years). There is authority for the proposition that, when the claim is asserted after expiration of the applicable statute of limitations, no proof of prejudice is necessary. *Larios v. Victory Carriers, Inc.*, 316 F.2d 63, 67 (2d Cir. 1963); *Schiavone-Bonomo Corp. v. Buffalo Barge Towing Corp.*, 132 F.2d 766 (2d Cir. 1942); *A. Bottacchi S.A. v. Philipp Bros. Latin Am. Corp.*, 410 F.Supp. 375 (S.D.N.Y.1976). Alternatively, it might be said that the com-

mercial arbitrators viewed the substantial period of time as being prejudice *per se*, and not requiring any proof of specific prejudice.

Even if we assume, however, that the arbitrators were simply acting contrary to the law, and knew it, with respect to laches, they would appear to have been equally guilty of this with respect to their decision as to the earning of the freight. The language of the charter clearly states that ninety percent was earned on loading and was nonreturnable, and that ten percent of the freight would be payable on the completion of the voyage or on discharge of the cargo. As the legal arbitrator found, there simply is no rule of law that could construe this to entitle the owners of the final ten percent after the vessel sank and the cargo was lost at sea. It would appear as to this issue that the commercial arbitrators were applying their notions of justice as to what the law should be in a situation of this nature. Apparently, it was their view that, since the cargo insurance included the cost of the freight, and since the cargo interests paid the charterer, the charterer should have paid it to the owner. Hence, their conclusion that the language of the contract was merely an oversight and did not reflect the true intention of the parties in the context of usual chartering practices.

In the final analysis, therefore, we have a decision of a legal mind, which is legally correct, and we have a decision of the commercial men, which probably does justice as they see it within their industry. If there were reason to upset one of the commercial arbitrators' views as being in manifest disregard of the law, there would be equal reason for upsetting the other, in which event the plaintiff would still lose. This Court, however, does not feel compelled to upset any portion of the decision of the arbitrators as having been in manifest disregard of the law. Consequently, the defendant's motion to confirm the award is granted and judgment may be entered accordingly.

So ordered.