## HAYS *v.* PORT OF SEATTLE ET AL.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WASHINGTON.

No. 70.  Argued November 12, 1919.—Decided January 5, 1920.

A bill setting up obligations of a contract with a State and charging that they were impaired by subsequent state legislation *held* to present a controversy under the Constitution, conferring jurisdiction upon the District Court and warranting a direct appeal under § 238, Jud. Code.  P. 237.

There is a distinction between a statute that has the effect of violating or repudiating a contract made by a State and one that impairs its obligation.  *Id.*

Appellant contracted with the State of Washington to excavate certain waterways in Seattle Harbor for a certain compensation, using excavated material in filling in adjacent state lands, upon which he was to have a lien to secure the compensation; but after long delays without substantial performance by the contractor an act was passed to abandon the project and vest the title to the lands in a municipality.  *Held,* that the obligation of the contract was not thereby impaired.  *Id.*

An appropriation of private property for a public purpose by an act of a state legislature is not violative of the Fourteenth Amendment if a general law permits the owner, upon giving security for costs, to sue the State in her courts and provides that any judgment for his damages and costs shall be paid out of the state treasury.  P. 238.

In the federal equity practice the defense of laches need not be set up by plea or answer but may be taken advantage of either by demurrer or upon final hearing.  P. 239.

226 Fed. Rep. 287, affirmed.

THE case is stated in the opinion.

*Mr. William F. Hays* in propria persona.

*Mr. L. T. Turner,* with whom *Mr. O. B. Thorgrimson* and *Mr. Harold Preston* were on the brief, for appellees.

MR. JUSTICE PITNEY delivered the opinion of the court.

Appellant filed his bill in equity for an injunction to restrain the enforcement of an act of the legislature of the State of Washington, approved March 11, 1913 (Sess. Laws, p. 195), entitled "An act vacating a portion of Smith's Cove Waterway, in the city of Seattle, and vesting the title of the vacated portion in the port of Seattle," upon the ground (a) that it impaired the obligation of an existing contract between him and the State, in violation of § 10 of Art. I of the Constitution of the United States; and (b) that it deprived him of property without due process of law, contrary to § 1 of the Fourteenth Amendment. The District Court on final hearing dismissed the bill (226 Fed. Rep. 287), and the case is brought here by direct appeal under § 238, Jud. Code, because of the constitutional questions.

The facts, shortly stated, are as follows: Under an act of the legislature approved March 9, 1893 (Sess. Laws, p. 241), which made provision for the excavation by private contract of waterways for the uses of navigation, complainant and another party to whose rights he has succeeded obtained a contract with the State, acting by the Commissioner of Public Lands, which was approved by the Governor on March 7, 1896. It provided for the excavation by complainant of Smith's Cove Waterway, in Seattle Harbor, extending from the outer harbor line through the intervening tide lands to the head of Smith's Cove, the excavated material to be used for filling in and raising above high tide the adjacent tide and shore lands belonging to the State of Washington. For doing this he was to be entitled to compensation equivalent to the cost of the work plus 15 per centum and interest, for which he was to have a lien upon the tide and shore lands so filled in. The State agreed to hold these lands subject to the operation of the contract pending its execution, and

subject to the ultimate lien of the contractor thereon, and that it would perform by its authorized agents all things required by the Act of 1893 to be performed by the State. The contract provided for and specified the character of the bulkheads and retaining walls to be used, reserving, however, to the Commissioner of Public Lands the right to modify these plans and specifications as to "shape, form, and character of material" as might appear necessary. The contract required complainant at his own cost to excavate also a waterway to extend from the north end of the Smith's Cove Waterway across the peninsula separating the Cove from Salmon Bay, such excavation to be made under the direction and in accordance with the plans of an engineer to be designated by the Governor of the State or the Secretary of War of the United States, and when excavated to be owned, possessed, and controlled by the United States or by the State, free of cost to them, if the right of way and the privilege of excavating across the peninsula should be accorded to the contractor free of cost or if fair compensation should be made to him therefor. Work was to be commenced within sixty days and completed within two years from the date of approval.

On May 4, 1896, complainant entered upon performance of the contract and commenced driving piles for the construction of a bulkhead. Almost immediately he was notified by the Commissioner of Public Lands that the latter elected to exercise the right, as provided by the contract, to change the form of bulkhead. This had the effect of requiring a suspension of work until modified plans and specifications for the bulkheads should be prepared. Complainant did suspend the work, and it never was resumed thereafter. There were negotiations and correspondence between him and the Commissioner of Public Lands looking to the preparation of the modified plans and specifications, but they resulted in nothing.

Each party seems to have insisted that it was the duty of the other to furnish them.

Complainant contends that he was at all times ready and prepared to carry out the contract on his part, but was prevented from doing so by acts and omissions of the State and its representatives, including the failure to furnish plans for the modified form of bulkhead and a failure to furnish complainant with a right of way across the peninsula between the head of Smith's Cove and Salmon Bay. Defendants contend that repeatedly, and in particular in the month of November, 1898, complainant was notified that his plans were wholly inadequate and would be insufficient for the purpose for which the retaining wall was designed; and that on the latter occasion he was notified to submit proper plans and specifications and to commence operations within ten days after their approval.

While the excavation project thus remained in suspense, and pursuant to an act "Authorizing Establishment of Port Districts," approved March 14, 1911 (Sess. Laws, p. 412), the Port of Seattle was established as a municipal corporation with territorial limits including Smith's Cove Waterway, Salmon Bay, and the intervening peninsula. This act conferred extensive powers for the regulation, control, and improvement of the harbor and navigable and non-navigable waters within such district, in the interest of the public.

Thereafter, by the statute that is now under attack (Sess. Laws 1913, p. 195) it was enacted that the northerly part of the Smith's Cove Waterway should be vacated and the title thereto vested in the Port of Seattle. Complainant was fully advised of this legislative measure, even prior to its enactment.

After it took effect, which was in June, 1913, the Port Commission took possession of the waterway, exercised control over it, and did a considerable amount of excava-

tion, filling, and bulkhead construction, having spent large sums of money therein between the taking effect of the act and November 14, 1914, when the bill of complaint was filed.

Coming to the questions raised upon the present appeal: The averments of the bill setting up the alleged obligations of complainant's contract with the State, and the contention that they were impaired by the Act of 1913, presented a controversy under the Constitution of the United States, and (a sufficient amount being involved) conferred jurisdiction upon the federal court irrespective of the citizenship of the parties, and at the same time warranted a direct appeal to this court under § 238, Judicial Code. *Greene* v. *Louisville & Interurban R. R. Co.*, 244 U. S. 499, 508.

The merits remain for determination.

Upon the first constitutional point, it is important to note the distinction between a statute that has the effect of violating or repudiating a contract previously made by the State and one that impairs its obligation. Had the legislature of Washington, pending performance or after complete performance by complainant, passed an act to alter materially the scope of his contract, to diminish his compensation, or to defeat his lien upon the filled lands, there would no doubt have been an attempted impairment of the obligation. The legislation in question had no such purpose or effect. It simply, after seventeen years of delay without substantial performance of the contract, provided that the project should be abandoned and title to the public lands turned over to the municipality. Supposing the contract had not been abandoned by complainant himself or terminated by his long delay, its obligation remained as before, and formed the measure of his right to recover from the State for the damages sustained. *Brown* v. *Colorado*, 106 U. S. 95, 98; *St. Paul Gas Light Co.* v. *St. Paul*, 181 U. S. 142, 148–150; *Dawson* v.

*Columbia Trust Co.,* 197 U. S. 178, 181; *Lord* v. *Thomas,* 64 N. Y. 107; *Caldwell* v. *Donaghey,* 108 Arkansas, 60, 64; 45 L. R. A., N. S., 721; Ann. Cas. 1915 B, 133.

We deem it clear also that the Act of 1913 had not the effect of depriving complainant of property without due process of law, in contravention of the Fourteenth Amendment. Assuming he had property rights and that they were taken, it clearly was done for a public purpose, and there was adequate provision for compensation in §§ 886–890, Rem. & Ball. Code of Washington, which entitle any person having a claim against the State to begin an action thereon in a designated court upon the mere giving of security for costs, whereupon service of the complaint is to be made upon the Attorney General and Secretary of State, the action is to proceed in all respects as other actions, with a right of appeal to the Supreme Court, and, in case of a final judgment against the State, a transcript of it is to be furnished to the Auditor of State, who is required thereupon to "audit the amount of damages and costs therein awarded, and the same shall be paid out of the state treasury." If his claim has not been barred by limitation of time, this statute constitutes an adequate provision for assured payment of any compensation due to complainant without unreasonable delay; and hence satisfies the requirement of due process of law as clearly as if the ascertainment of compensation had preceded the taking. *Bragg* v. *Weaver, ante,* 57.

The District Court, besides finding complainant's case to be otherwise without merits, held in effect that he was barred from relief in equity by laches, because after the taking effect of the Act of 1913 he stood by for more than a year and permitted the Port Commission to enter upon extensive improvements and expend large moneys on the waterway and adjoining lands, before he began his suit. The only answer made to this is that the defense of laches was not pleaded. But in the equity practice of the courts

of the United States (excepted from the Conformity Act, see Rev. Stats., §§ 913–914) laches is a defense that need not be set up by plea or answer. It rests upon the long-established doctrine of courts of equity that their extraordinary relief will not be accorded to one who delays the assertion of his claim for an unreasonable length of time, especially where the delay has led to a change of conditions that would render it unjust to disturb them at his instance. It is for the complainant in his bill to excuse the delay in seeking equitable relief, where there has been such; and if it be not excused his laches may be taken advantage of either by demurrer or upon final hearing. *Maxwell* v. *Kennedy,* 8 How. 210, 222; *Badger* v. *Badger,* 2 Wall. 87, 95; *Marsh* v. *Whitmore,* 21 Wall. 178, 185; *Sullivan* v. *Portland, etc., R. R. Co.,* 94 U. S. 806, 811; *National Bank* v. *Carpenter,* 101 U. S. 567; *Landsdale* v. *Smith,* 106 U. S. 391; *Hammond* v. *Hopkins,* 143 U. S. 224, 250; *Galliher* v. *Cadwell,* 145 U. S. 368, 371–373; *Hardt* v. *Heidweyer,* 152 U. S. 547, 559; *Abraham* v. *Ordway,* 158 U. S. 416, 420; *Willard* v. *Wood,* 164 U. S. 502, 524; *Penn Mutual Life Ins. Co.* v. *Austin,* 168 U. S. 685, 696–698.

*Decree affirmed.*