## PAGE et al. v. NATURAL GAS & FUEL CO.

Circuit Court of Appeals, Eighth Circuit.
October 7, 1929.

No. 8299.

Frank J. Looney and J. M. Grimmet, both of Shreveport, La. (Pat McNalley and McNalley & Sellers, all of El Dorado, Ark., and Pugh, Grimmet & Boatner, of Shreveport, La., on the brief), for appellants.

Mr. Jeff Davis, of El Dorado, Ark., for appellee.

Before VAN VALKENBURGH and COTTERAL, Circuit Judges, and SCOTT, District Judge.

COTTERAL, Circuit Judge. The appellants, John H. Page, successor to Mike Lyvers, trustee for Mike Lyvers Syndicate, and that Syndicate, filed their bill against the Natural Gas & Fuel Corporation, on December 20, 1927, in a state court seeking a decree to the effect that appellant trustee is the owner of the north half of a mineral lease upon a tract of 40 acres, that the lease be conveyed to them by the defendant engaged in operating it, and that the defendant account for the oil and gas produced therefrom. The suit was removed to the federal court, where it was dismissed on motion of the defendant for failure to set out a cause of action, and from that decree the plaintiffs have appealed.

In substance, the bill alleged that on February 23, 1923, the Mike Lyvers Syndicate was organized pursuant to the laws of Arkansas as a common-law trust, for the benefit of certificate holders who paid for their interests the amount of $200,000; that the declaration was duly filed for record on February 22, 1923, in Union county, Ark.; that the syndicate through its trustee acquired the W. ½ of the N. W. ¼ of the N. W. ¼

of section 9, township 16 S, range 15 W., in that county, that in the bankruptcy proceeding of Morris Guaranteed Gusher Syndicate, No. 3, Mike Lyvers personally intervened, claiming ownership of the north half of the lease, with the result that the decree of the referee was adverse to him, and was that he should convey the property to the bankruptcy trustee by quitclaim deed, and the title to it was vested in the said trustee, and that decree was affirmed on review by the District Court; that he executed such deed in the belief it was in accordance with the order of the court, at the instance and direction of the trustee, who prepared the deed, as the trustee for the Mike Lyvers Syndicate, the real owner of the property, without right, power, or authority; that the lease was sold by the bankruptcy trustee to the Natural Gas & Petroleum Corporation (called the petroleum corporation), which at the time was fully advised that the property belonged to the Mike Lyvers Syndicate, a trust estate; that Mike Lyvers has signed other instruments, at the instance of the bankruptcy trustee, corrective of errors in description and affecting the interests of the syndicate in the lease; that the defendant and appellee, the Natural Gas & Fuel Corporation (called the fuel corporation), took possession of the lease under claim of ownership, by transfer, and has produced therefrom and converted to its use large quantities of oil, in excess of $500,000, and continues therein, without accounting to plaintiff and without claim thereto; that the petroleum corporation and the fuel corporation had knowledge of the above facts because Jeff Davis was fully aware of them, being their attorney at the time of both transfers to those companies; that the claim of appellee is unfounded, and is a cloud on plaintiff's title; that the stock in both companies is owned by the same parties, and they are controlled by the same officers; that the latter company took title to said property with full knowledge of all things imputed to the former company; and that the plaintiff is without a complete and adequate remedy at law.

Copies of the declaration of trust, the proceedings in bankruptcy, the quitclaim deed, and other exhibits are attached to the bill.

In ruling on the motion to dismiss the bill, the District Judge reviewed the history of the case. He noted the quitclaim deed was made in three capacities—as an individual, trustee for the Mike Lyvers Syndicate, and trustee; that the claim of mistaken belief inducing the quitclaim deed was contrary to Lyvers' petition for review and the deed itself; that there was no allegation of deception or coercion upon him, or want of consideration to the bankruptcy trustee from his purchaser, or to it from its grantee; that the notice to Jeff Davis as attorney was without definite averment of facts, or while acting for them within the scope of his authority; and for these reasons the bill was dismissed.

The appeal presents four main questions: (1) Whether the order of the referee upon Mike Lyvers as an individual to execute the deed bound him to do that as trustee of the syndicate; (2) whether his deed as trustee conveyed the title to the lease; (3) whether the defendant, the fuel corporation, was an innocent purchaser of the lease; and (4) whether the plaintiffs were guilty of laches, barring this suit. We are constrained to hold that the first three questions must be answered in the negative, for sound and sufficient reasons. The last requires no absolute answer, in view of a proposed amendment to the bill.

1. The intervention in the bankruptcy proceeding was made solely by Mike Lyvers, as an individual, representing that the bankruptcy trustee had taken possession of his property, consisting of leases, including the 40 acres in dispute, requesting that the producing property be turned back to him and that the trustee sell none of the property. The referee found that the property was claimed by Lyvers and another, one Morris, was purchased with funds derived from the sale of units of the bankrupt's trust estate, was taken in their names and the name of Mike Lyvers, trustee, and thus handled for their convenience, the funds were commingled and hard to trace, the interveners failed to testify, but appeared by attorneys and cross-examined the witnesses. The referee thereupon ordered that the interventions of Lyvers and Morris be denied, that the title to the property be vested in the bankruptcy trustee, and that the interveners execute conveyances of the legal title to the property to said trustee. On review, the District Judge found that the trustee had filed a petition for a summary order requiring the conveyances; that thereafter Lyvers moved to dismiss his intervention, and the motion was denied; that the referee had found the property belonged to the estate; that the only question was one of jurisdiction to make the order, and it was sustained. The order of the referee requiring the quitclaim deed by Lyvers was affirmed.

We do not inquire collaterally into the merits of these proceedings, passing the serious contention that the referee had no jurisdiction to make the summary order on Lyvers. See May v. Henderson, 268 U. S. 111, 45 S. Ct. 456, 69 L. Ed. 870; Harrison v. Chamberlin, 271 U. S. 191, 46 S. Ct. 467, 70 L. Ed. 897. Aside from that, it is clear that the order on him as an individual had no force whatever upon him as trustee of the Mike Lyvers Syndicate. It was not an adjudication against him as trustee, and does not estop the plaintiff, as successor trustee, to maintain this bill. 34 C. J. 984, 997, 998, 999; Troxell v. Del., Lack. & West. R. R., 227 U. S. 434, 33 S. Ct. 274, 57 L. Ed. 586.

2. The next question arising from the execution of the quitclaim deed calls for some notice of the declaration of trust. It is prefaced by a recital that Mike Lyvers, as trustee, being about to take title to certain oil and gas leases, declares that he and his heirs, successors, administrators, and executors shall hold said leases and all other property that may be transferred to him as trustee upon the trusts therein set forth, for the benefit of the owners of certificates of interest. This is followed by some twenty articles defining the powers of the trustee and the rights of the beneficiaries, to whom the certificates were to issue for the consideration to be paid to the trustee of $10, or multiples thereof, entitling them to the benefits of the trust estate. The trust was to be known as Mike Lyvers Syndicate, with Mike Lyvers as trustee, holding in his own name the legal title to the corpus of the trust, possessing the sole power of selling, mortgaging and incumbering the property, in any manner or form, delegating the same, in record form, until superseded, and with the sole right to resign and power to name his successor, with the same powers. Alienation of or liens upon the property were to work a revocation of their estate and be paramount thereto, their interest attaching to the proceeds to be undivided and inure to their heirs and assigns, their rights being confined to income distributable by the trustee. The purpose of the trust was to buy and hold oil and gas leases, drill upon and operate them, refine the product, and barter, sell, and exchange such property. The trustee was authorized to pay salaries and expenses, and terminate the trust by merger or reorganization, etc.

Article XIV provides as follows:

"Sec. 1. The trustee may at all times, for value, sell or otherwise dispose of equitable estate in the corpus, as in these articles provided, to such extent as in his discretion he may see fit, and may close the sales of same at pleasure, and the proceeds from the sale of such equitable estate in the corpus shall accrue and inure to the trustee fund by him to be expended in his discretion for promoting, procuring and effecting the purpose of this trust."

While the sole power of alienating the property was thus vested in the trustee, it did not authorize him to donate it to others, or sacrifice it in a manner contrary to his fiduciary obligation to the cestui que trustent, or dispose of it otherwise than for their benefit. A fair construction of the articles is that the purpose was to enable him to act according to his own discretion and judgment, but in keeping with those obligations and in good faith in the discharge of his trust. It is fundamental that he was in duty bound to act for the promotion of their interests. 26 R. C. L. p. 1289; 39 C. J. 348, 349, 350. The execution of the quitclaim deed of this property, viewed as a voluntary act, without consideration, was therefore made without authority, and was a plain breach of the obligations of the trust. This being so, we find no occasion to determine whether the bill sufficiently alleges coercion or duress on the part of the bankruptcy trustee in obtaining the deed.

The petroleum corporation derived no title to the property at the sale by the bankruptcy trustee, as he was vested by his appointment only with the title of the bankrupt, the Morris Syndicate (section 110, title 11, U. S. Code [11 USCA § 110]), and the order was ineffective to vest in the trustee the title of the absent party, the trustee of the Lyvers Syndicate. That company has no claim to title except through the quitclaim deed; and that instrument, for the reasons stated, conveyed no title.

3. A purchaser is charged with notice of every matter appearing in the deeds forming an essential link in his chain of title, and those of which he would have learned by due inquiry, including a trust, such as is disclosed by the deed of the trustee of the Mike Lyvers Syndicate. 39 C. J. 1713, 1714, 1715; Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 437, 12 S. Ct. 239, 35 L. Ed. 1063; 26 R. C. L. 1280. Inquiry by the petroleum corporation would have readily developed the pertinent facts that the order of the referee was not a direction to the trustee to make the deed, and that by the declaration of trust, recorded February 22, 1923, the execution of the quitclaim deed was a breach of the trust. The defendant, the fuel corporation, was in

no better position, as before it obtained the assignment of the lease on March 2, 1925, the quitclaim forming a chain in its title had been theretofore recorded on November 25, 1924. But, aside from constructive notice, the bill alleged that the petroleum corporation was fully advised that the property belonged to the Lyvers Syndicate, there was identity of the stockholders and officers of the two corporations, and further the fuel corporation took title with full knowledge of all things imputed to the petroleum corporation. We hold the bill amply alleged notice to the fuel corporation. It was in no sense an innocent purchaser of the property.

4. The defense of laches is dependent on the fact that the quitclaim deed was dated October 13, 1924, the conveyance of the bankruptcy trustee to the petroleum corporation was made on March 2, 1925, and this suit was brought on December 20, 1927, summons of that date being served on January 4, 1928. As counsel assert, relief will be denied if the bill discloses laches in bringing suit. Hays v. Port of Seattle, 251 U. S. 233, 40 S. Ct. 125, 64 L. Ed. 243. It must be conceded, the authorities call for diligence in seeking relief where there are sufficient circumstances connected with the development of mineral leases. Without referring to the cases, our present view is that plaintiffs' bill is not open to this objection, as it alleges no more than that the defendant has profited by producing large quantities of oil from the leases, and will continue to do so; and there is no averment of exploration, development, or outlays by the defendant, or of change in the value of the property.

But we refrain from finally deciding the question, as the plaintiffs have justifiably asked leave of this court to amend the bill to meet this objection to it. It is true they elected to stand on the bill, and this would ordinarily limit them to its allegations. Security Sav. Ass'n v. Buchanan (C. C. A.) 66 F. 799; Investor's Guaranty Corp. v. Luikart (C. C. A.) 5 F.(2d) 793. But we consider that the objection was not expressly set out in the motion to dismiss the bill, the dismissal was not based upon it, counsel for appellants advise us, as opposing counsel admit, it was not presented to the District Court, and they assert they would have there amended the bill had this been done. They claim surprise it is raised on appeal, and for this reason they have presented to us the motion to amend. Their election to stand on the bill should not therefore conclude them. In any event, the appellee is not entitled to an affirmance of the decree in this case on the ground of laches.

This court has the power to allow an amendment even on appeal in the interest of justice. Jones v. Meehan, 175 U. S. 1, 29, 20 S. Ct. 1, 44 L. Ed. 49; Wiggins Ferry Co. v. Ohio & Miss. Ry. Co., 142 U. S. 396, 12 S. Ct. 188, 35 L. Ed. 1055. It may be done where the facts appear in the record, the practice, however, being to remit the question to the trial court. Norton v. Larney, 266 U. S. 511, 45 S. Ct. 145, 69 L. Ed. 413. The proposed amendment will be properly allowed by the District Court; and, if made, the question of laches will be for determination by that court. Otherwise, as we conclude, the bill states sufficient facts as a basis for relief.

The decree of the District Court is therefore reversed, with direction to allow the plaintiffs to amend their bill, if so advised within a reasonable time, and for further proceedings consistent with this opinion.

Reversed.