**Francisco Torres RAMOS,**
**Plaintiff, Appellant,**

v.

**CONTINENTAL INSURANCE COMPANY, Defendant, Appellee.**

**No. 73-1042.**

United States Court of Appeals, First Circuit.

Argued Feb. 6, 1974.

Decided March 20, 1974.

Gustavo A. Gelpi, San Juan, P. R., with whom Nachman, Feldstein & Gelpi, San Juan, P. R., was on brief, for plaintiff, appellant.

Alberto Santiago-Villalonga, Rio Piedras, P. R., with whom Hartzell, Ydrach, Mellado, Santiago, Perez & Novas, Hato Rey, P. R., was on brief, for defendant, appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal is one more effort by plaintiff, a resident of Puerto Rico, to recover under federal maritime standards for injuries sustained in 1963 while

working as a longshoreman aboard the S.S. DETROIT in San Juan harbor. Soon after the accident, he unsuccessfully sued Beauregard, the vessel's owner, and Sea-Land, its demise charterer. Ramos. v. Beauregard, Inc., 423 F.2d 916 (1st Cir.), cert. denied, 400 U.S. 865, 91 S.Ct. 101, 27 L.Ed.2d 104 (1970). The claim against Sea-Land based upon the vessel's alleged unseaworthiness was held to be barred by Puerto Rico's exclusive workmen's compensation remedy.[1] Recovery from Beauregard was denied because it did not control the vessel; and an *in rem* claim was dismissed because neither the charterer nor owner were personally liable. *Id.* at 917–918.

On May 3, 1971, plaintiff brought the present action against Continental, a New York based insurer of Sea-Land. He alleged that pursuant to Title 26 of the Laws of Puerto Rico, §§ 2001, 2003, "an insurer is absolutely liable to third parties for damages and injuries caused by the negligence of its insured."[2] He then repeated his maritime claim against Sea-Land, to wit, that he was injured while doing traditional seamen's work aboard the S.S. DETROIT, and that his injury was due to the failure of Sea-Land, operator of the DETROIT, to supply a seaworthy vessel. While plaintiff seemed to be invoking diversity jurisdiction in order to pursue a direct action claim created under Puerto Rico law, he alleged in the complaint that "all and singular, the premises are true and within the admiralty and maritime jurisdiction of the United States and this Honorable Court."

Defendant moved for summary judgment, and the district court ruled that the one year prescription in 31 L.P.R.A. § 5298 was a complete bar to the action. Fraticelli v. St. Paul Fire & Marine Insurance Co., 375 F.2d 186 (1st Cir. 1967).

We held in *Fraticelli* that Puerto Rico's direct action legislation created "a separate cause of action", tying together an insured's contract rights against his insurer with a third party's tort rights against the insured. While the action was "created by reason of the insurance contract", *id.* at 188, it was based "on the same factual situation" as was the legal liability of the insured. We reasoned that a direct action was not a contract action but rather one in which damages arose from the commis-

---

1. Sea-Land was an insured employer, and appellant received benefits and compensation. Section 21 of 11 L.P.R.A. provides in part, "Where an employer insures his workmen or employees in accordance with this chapter, the right herein established to obtain compensation shall be the only remedy against the employer." *See* Salas Mojica v. Puerto Rico Lighterage Co., 492 F.2d 904 (1st Cir. 1974).

2. The quoted language misstates Puerto Rico's statute, which allows a direct action to recover for a loss covered by a liability policy to the extent of the insurer's liability. 26 L.P.R.A.:

"§ 2001. *Liability insurer's liability absolute*
The insurer issuing a policy insuring any person against loss or damage through legal liability for the bodily injury, death, or damage to property of a third person, shall become absolutely liable whenever a loss covered by the policy occurs, and payment of such loss by the insurer to the extent of its liability therefor under the policy shall not depend upon payment by the insured of or upon any final judgment

against him arising out of such occurrence. —Ins. Code § 20.010."

"§ 2003. *Suits against insured, insurer*
(1) Any individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy, which action he may exercise against the insurer only or against the insurer and the insured jointly. The liability of the insurer shall not exceed that provided for in the policy, and the court shall determine, not only the liability of the insurer, but also the amount of the loss. Any action brought under this section shall be subject to the conditions of the policy or contract and to the defenses that may be pleaded by the insurer to the direct action instituted by the insured.
(2) If the plaintiff in such an action brings suit against the insured alone, such shall not be deemed to deprive him of the right, by subrogation to the rights of the insured under the policy, to maintain action against and recover from the insurer after securing final judgment against the insured.—Ins. Code § 20.030."

sion of a tort—hence subject to Puerto Rico's one year tort prescription rather than the 15 year contract prescription. As injuries in *Fraticelli* arose from an automobile accident, there was, of course, complete identity between the prescription applicable to the underlying tort and the direct action itself. We noted this, saying it would be "illogical to provide two different periods of limitation—one year and fifteen years" for the two actions. *Id.* at 189.

Plaintiff sees the instant case as a test of the latter logic since here the underlying claim, a federal maritime cause for unseaworthiness, is not subject to Puerto Rico's one year tort prescription, but rather is measured by the equitable doctrine of laches. Gardner v. Panama R.R., 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951). If the logic of *Fraticelli* requires the direct action to be prescribed identically to the underlying tort, then the laches measure should apply.

■ The Supreme Court of Puerto Rico, agreeing with our holding in *Fraticelli,* stated,

"Since both actions, that which is brought against the insured as well as the one which is filed against the insurance company, have the same origin and since both depend on the same evidence, there is no justification to establish different periods of prescription." Ruiz Millan v. Maryland Casualty Co., No. R–72–43 (P.R. Mar. 13, 1973).

We think the rationale of both *Fraticelli* and *Maryland Casualty* require that when the underlying tort is a federal maritime tort, the timeliness of the direct action be determined by the doctrine of laches. Had plaintiff originally chosen to sue Continental, or both Sea-Land and Continental together, the timeliness of his action against Continental should plainly be measured by the same standard as that against Sea-Land. Any other result would be inconsistent with the purpose of the direct action statute, which is to allow rights against the insurer generally co-extensive with a third-party's rights against the insured. As the *Maryland Casualty* court said, "There is no justification to establish different periods of prescription." While for land-based torts, the one year statute of limitations applies to the direct action, for federal maritime torts the laches standard will apply.

■ We are not sure where this holding will leave the plaintiff ultimately, although at the moment it requires us to remand. "[T]he existence of laches is a question primarily addressed to the discretion of the trial court. . . . ." *Gardner, supra* at 30 of 342 U.S., at 13 of 72 S.Ct. Upon remand, the district court will be faced with deciding whether laches is a bar. Although not conclusive, Puerto Rico's one year tort statute of limitations will be relevant to the district court's ruling.[3] Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 533, 76 S.Ct. 946, 100 L.Ed. 1387 (1956). Plaintiff's failure to file suit until after expiration of the analogous one year period creates an inference that the delay has been both inexcusable and prejudicial. Cities Service Oil Co. v. Puerto Rico Lighterage Co., 305 F.2d 170 (1st Cir. 1962); Oroz v. American Lines Ltd., 259 F.2d 636 (2d Cir. 1958), cert. denied, 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 572 (1959).

Aside from the legal presumption created by the running of the analogous local statute, plaintiff may face a formi-

---

3. A libel may, indeed, be dismissed on motion where it appears on its face that the analogous local statute of limitations has run and, as in the instant case, no facts are pleaded which would indicate that libellant may be able to prove absence of laches. *See e. g.,* Hays v. Port of Seattle, 251 U.S. 233, 239, 40 S.Ct. 125, 64 L.Ed. 243 (1920); Redman v. United States, 176 F.2d 713 (2d Cir. 1949); Kane v. U. S. S. R., 189 F.2d 303 (3d Cir. 1951), cert. denied, 342 U.S. 903, 72 S.Ct. 292, 96 L.Ed. 676 (1952); Doherty v. Federal Stevedoring Co., 198 F.Supp. 191 (S.D.N.Y.1961). He may be allowed to proceed if he is able to amend to allege facts justifying the delay and indicating an absence of prejudice to the defendant.

dable challenge as eight years have passed between the occurrence of the accident and the bringing of this suit. Parties are not ordinarily permitted to litigate claims *seriatim*. Continental, whose lawyers defended Sea-Land and Beauregard throughout the original litigation, is now confronted with a suit which could have been resolved earlier in consolidated proceedings. Although we do not decide the question, Continental would seem to be prejudiced by the increased expense of these protracted proceedings, and it may be difficult to prepare a defense and locate witnesses so many years after the accident.

 Moreover, on the record before us, plaintiff's delay is arguably inexcusable. In the main, his claim is identical to that first brought in 1964 against Sea-Land.[4] The difficulties of recovery by an insured employee under maritime law were well known in Puerto Rico at the time of the accident. *See* Fonseca v. Prann, 282 F.2d 153 (1st Cir. 1960), cert. denied, 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961). To the extent the present case is a further ingenious attempt to avoid these impediments, the need for ingenuity was no less apparent in 1963 than now. That plaintiff may not fully have appreciated his legal posture until 1971 is not a justifiable excuse. Morales v. Moore-McCormack Lines, Inc., 208 F.2d 218 (5th Cir. 1953).

Plaintiff tries to avoid the problem by comparing this action to a timely suit to reach insurance proceeds after a successful judgment against an insured. Such suits are specifically permitted under the direct action statute. 26 L.P.R. A. § 2003(2). The period of limitations obviously does not begin until the case against the insured is over. However, the instant cause of action, if any, is based not upon a recently acquired judgment running in plaintiff's favor but upon the 1963 accident itself. Accordingly the question of laches must take into account the entire eight year period. The prior unsuccessful suit in no sense "tolled" the running of laches.

Reversed and remanded to the district court.

---

4. One might then ask why it is not barred by a collateral estoppel. *See* 12 G. Cough, Cyclopedia of Insurance Law § 45.923 (Anderson 2d ed. 1965). Presumably plaintiff intends to litigate the novel contention that the duty of the insurer is greater than that of Sea-Land, relying on cases holding that personal defenses of an insured, such as insolvency, limitation of liability, and sovereign immunity, are not available to an insurer. Torres v. Interstate Fire & Casualty Co., 275 F.Supp. 784 (D.P.R.1967). To that extent, plaintiff may hope to show that his claim is different from the one already decided against him, and thus to avoid an estoppel. As the issue is not before us, we do not now pass upon the merit of any such contention.