IN THE SUPREME COURT OF TEXAS
 
════════-═══
No.  
08-0265
════════════
 
City of Dallas, 
Petitioner,
 
v.
 
VSC, LLC,  
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Fifth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued January 8, 
2010
 
 
            
Chief Justice Jefferson delivered the opinion of the Court, joined 
by Justice Hecht, Justice Medina, Justice 
Green, Justice Willett, and Justice Lehrmann.
 
            
Justice Wainwright delivered a dissenting opinion, joined by Justice Johnson and Justice Guzman.
 
            
We expect our government to retrieve stolen property and return it to the 
rightful owner.  What happens, though, when a person claims an interest in 
property the government has seized?  In this case, the City of Dallas 
seized vehicles, which it alleged were stolen, from a company that was entitled 
to petition for their return.  See Tex. Code Crim. Proc. art. 47.01a(a).  Instead of pursuing its statutory remedy, 
the company sued, alleging that its interest in those vehicles had been taken 
without just compensation.  We hold that the availability of the statutory 
remedy precludes a takings claim.  We reverse the court of appeals’ 
judgment and render judgment dismissing this suit.
I. Background
            
Beginning in the summer of 2002 and continuing through 2004, the City’s police 
department seized a number of vehicles from VSC, a licensed vehicle storage 
facility.[1]  VSC initially alleged that the City 
seized 326 vehicles.[2]  City police officers testified that 
all of the seized vehicles had been reported stolen or otherwise displayed 
indicia of theft, such as altered vehicle identification numbers.  VSC’s 
records confirmed that many of these vehicles had been reported stolen.
            
Several days after the initial seizure, VSC sued the City, asserting a lien for 
fees related to the vehicles’ storage and contending that the City’s actions 
amounted to an unconstitutional taking.  The City removed the suit to 
federal court, which took jurisdiction over all but the takings claim,[3] which it remanded to state court along 
with the related declaratory judgment action.[4]  The City filed a plea to the trial 
court’s jurisdiction on several grounds, which that court denied.  The 
court of appeals affirmed with respect to all but one issue.[5]  242 S.W.3d 584, 
599.  We granted the petition for review.  53 
Tex. Sup. Ct. J. 13, 15 (Oct. 23, 2009).[6]
II. VSC’s Takings Claim
A. The Statutory Remedy
            
Texas law permits a police officer to seize, without a warrant, vehicles that 
reasonably appear to have been stolen.  Tex. Transp. Code § 501.158(a) (permitting the warrantless 
seizure of allegedly stolen vehicles if an officer has probable 
cause).  Vehicles seized under that authority are 
treated as stolen for purposes of custody and disposition.  Id. § 501.158(b).  But it may turn out that 
the property was not stolen at all, that it has multiple owners, or that it is 
subject to other claims, like a lien or leasehold interest.  For these and 
other reasons, the Legislature enacted chapter 47 of the Code of Criminal 
Procedure, which protects a person’s claimed interest in seized property.  
When there is a dispute as to property ownership, an officer possessing 
allegedly stolen property must secure it until the court directs its 
disposition.  Tex. Code Crim. Proc. 
art. 47.01(a).  That officer 
must file with the court a schedule of the property and its value and must 
“notify the court of the names and addresses of each party known to the officer 
who has a claim to possession of the seized property.”  Id. art. 47.03.
            
Because the officer may not know the identity of all persons with a claim to 
possession, the statute provides that any person with a property interest may 
assert that interest directly with the court.[7]  Id. art. 47.01a(a) (“[U]pon the petition of 
an interested person” a judge “may hold a hearing to determine the right to 
possession of the property.”).  During that hearing “any interested person” 
may present evidence establishing ownership.  Id. 
art. 47.01a(c).  The individual proving the 
superior right to the property is entitled to its return, subject to the State’s 
use of it in prosecuting related crimes.[8]  Id. arts. 47.01a(a)(1)-(a)(2), 47.04.  Occasionally—perhaps 
frequently—the property is never claimed and the government either sells or 
destroys it.  Id. arts. 18.17, 47.06.  If the property is sold, its true owner 
may recover the proceeds.  Id. arts. 18.17(e), 47.07.[9]
            
Here, forty-seven of the seized vehicles were the subject of chapter 47 
proceedings initiated by the City and adjudicated in municipal court.  The 
court awarded some of the cars to VSC, some to the cars’ owners, and others to 
the owners on the condition that VSC’s fees were first satisfied.  Thus, in 
many cases, VSC regained possession of the vehicles that the City had seized, 
and in others it was awarded compensation.  VSC concedes that this 
procedure, when properly used, adequately protects its interests.  As such, 
VSC has not brought takings claims with respect to the vehicles for which 
municipal court hearings were held.
            
For the other 270 vehicles, VSC claims that it does not know how the City 
disposed of them—or if it did.  Though VSC could have initiated chapter 47 
proceedings to assert its interest in the vehicles, it argues here that if the 
City wished to dispose of the vehicles, it was required to give VSC notice prior 
to hearings on their disposition.  Any failure to do so, VSC argues, 
amounts to an unconstitutional taking of its asserted lien interest.[10]  We disagree and hold that because 
VSC had actual knowledge of the vehicles’ seizure—VSC knew the cars were seized 
from its lot, and it knew who seized them—it was required to pursue the chapter 
47 proceedings.[11]  We hold further that VSC must have 
utilized those procedures before a takings suit can be viable.
            
The constitution waives immunity for suits brought under the Takings Clause,[1][2] but this does not mean that a 
constitutional suit may be brought in every instance.  The Legislature’s 
broad authority to prescribe compensatory remedies for takings is 
well-established, so long as those methods comply with due process and other 
constitutional requirements.  See, e.g., Secombe v. R.R. Co., 90 U.S. 108, 117-18 
(1874) (holding that the Legislature has broad authority to create eminent 
domain procedures).  When the Legislature creates such a statutory 
procedure, recourse may be had to a constitutional suit only where the procedure 
proves inadequate, for it is not the taking of property, as such, that raises 
constitutional concerns, but the taking of property without just 
compensation.  See Williamson Cnty. Reg’l Planning 
Comm’n v. Hamilton Bank, 473 U.S. 172, 194 (1985) (“The [Takings Clause] 
does not proscribe the taking of property; it proscribes taking without just 
compensation.”).[13]  When there exists provision for 
compensation—or, as here, for the property’s return—a constitutional claim is 
necessarily premature.  See id. at 194-95 
(“If the government has provided an adequate process for obtaining compensation, 
and if resort to that process ‘[yields] just compensation,’ then the property 
owner ‘has no claim against the Government’ for a taking.” (quoting Ruckelshaus v. Monsanto Co., 467 U.S. 986, 
1013, 1018 n.21 (1984)) (alteration in original)); see also Yearsley v. W. A. Ross Constr. Co., 309 U.S. 18, 21 
(1940) (refusing to pass upon a takings claim because of the existence of a 
statute “afford[ing] a plain and adequate remedy”); 
Hurley v. Kincaid, 285 U.S. 95, 104 (1932) (holding that governmental action 
was not unconstitutional because “the complainant can recover just compensation 
under the Tucker Act in an action at law . . . [and t]he 
compensation which he may obtain in such a proceeding will be the same as that 
which he” is entitled to under the constitution); Crozier v. Fried. Krupp Aktiengesell-Schaft, 224 U.S. 290, 306-07 (1912) 
(rejecting a constitutional challenge on the basis of the Takings Clause because 
the relevant statute provided a compensatory mechanism).[14]
            
Immediately following the vehicles’ seizure, however, when VSC filed its 
district court lawsuit, VSC had a legal avenue through which it could 
potentially regain possession or compensation.  As the dissent 
acknowledges, operation of the chapter 47 procedure might have “moot[ed] VSC’s takings claim.” ___ S.W.3d at ___.  This is significant, because if a 
remedial procedure might have obviated the need for a takings suit, then the 
property simply had not, prior to the procedure’s use, been taken without 
just compensation.  Because VSC could seek possession or compensation 
through a remedial statutory scheme, it could not ignore that scheme in favor of 
initiating a constitutional takings suit.
            
Hays v. Port of Seattle, 251 U.S. 233 (1920), is a good illustration of 
this rule.  There, the Supreme Court refused to permit a claimant to bring 
a takings suit, despite the fact that the government had seized his property for 
a public purpose.  Hays, 251 U.S. at 
238.  The Court emphasized that the state provided a procedure by 
which the claimant could seek just compensation.  Id. (“[T]his 
statute constitutes an adequate provision for assured payment of any 
compensation due to complainant . . . .”).  Thus, the 
Supreme Court held that there could be no taking because the claimant bypassed 
the compensatory procedure.  
            
As in Hays, the claimant here alleges that a taking has occurred.  
As in Hays, the Legislature has provided a procedure capable of “constitut[ing] an adequate 
provision,” id., for compensation—here, actual possession.  And, as 
in Hays, the claimant here has ignored the compensatory scheme in favor 
of a constitutional claim.  Thus, we reject VSC’s taking claim because it 
did not pursue an established remedy to recover its claimed interest in the 
seized property.[15]
B. Notice
            
VSC suggests, however, that chapter 47 is constitutionally infirm because it 
does not require that the City notify claimed owners of these proceedings.  
Disputes about proper notice invoke procedural due process, not the Takings 
Clause.  In Lingle v. Chevron U.S.A. 
Inc., 544 U.S. 528, 543 (2005), the Supreme Court observed that takings and 
due process are distinct inquiries and held that due process claims must be 
addressed first because whether there has been proper notice is a question 
“logically prior to and distinct from” whether there has been a taking.  
The Takings Clause guarantees compensation “in the event of otherwise proper 
interference amounting to a taking.”  Id. (internal quotations 
omitted).  If due process is violated due to failure of notice, however, 
“that is the end of the inquiry” because “[n]o amount of compensation can 
authorize such action.”  Id.  Thus, VSC’s failure-of-notice 
claim is more properly considered as alleging a due process violation than a 
taking.  Regardless, we believe that VSC’s actual notice of the vehicles’ 
seizures was constitutionally sufficient and that it therefore had the burden of 
pursuing the chapter 47 remedy.
            
In Mullane v. 
Cent. Hannover Bank & Trust Co., 339 U.S. 306 (1950), the 
Supreme Court concluded that due process is satisfied if notice is “reasonably 
calculated, under all the circumstances, to apprise interested parties of the 
pendency of the action and afford them an opportunity to present their 
objections.”  Id. at 314.  The Mullane Court focused on the requirement that the 
parties be actually notified of an action that might affect their 
interests.  Id. at 315 (“The chance of actual notice is further 
reduced when, as here, the notice required does not even name those whose 
attention it is supposed to attract . . . .”).  The 
Supreme Court recognized “the impossibility of setting up a rigid formula as to 
the kind of notice that must be given,” holding that the “notice required will 
vary with circumstances and conditions.”  Walker v. 
City of Hutchinson, 352 U.S. 112, 115 (1956).  
            
In City of West Covina v. Perkins, 525 U.S. 234, 241 (1999), the Supreme 
Court held that actual notice is constitutionally sufficient notice of a 
remedial procedure when that procedure is easily discoverable.  There, the 
police seized personal property from Perkins’s home under a valid search 
warrant.  West Covina, 525 U.S. at 236.  The police did not 
suspect Perkins of a crime but, rather, were pursuing a former boarder who was 
purportedly involved in a homicide.  Id.  As required by 
statute, the police left Perkins a warrant that listed the seized property and 
named the issuing magistrate and executing officer.  Id. at 236-37.  Rather than seek a court order, 
Perkins sued the officers and alleged that the remedies for the property’s 
return did not satisfy due process.  Id. at 
237-38.  The Supreme Court distinguished Mullane, writing that while individualized notice of 
the seizure itself is necessary, 
 
[n]o 
similar rationale justifies requiring individualized notice of state-law 
remedies which, like those at issue here, are established by published, 
generally available state statutes and case law.  Once the property owner 
is informed that his property has been seized, he can turn to these public 
sources to learn about the remedial procedures available to him.  The City 
need not take other steps to inform him of his options.
 
Id. at 241.  The notice contained in the search 
warrant was sufficient process and Perkins was then required to initiate 
proceedings for the property’s return.  Id. at 
242-44.
            
The facts in this case mirror those in West Covina.  The police 
legally seized VSC’s property, and VSC was aware of what property was seized and 
by whom.  The Legislature provided a statutory remedy for the return of the 
property that was easily discoverable from public sources.  See Tex. Code Crim. P. ch. 47.[16]  Having 
given constitutionally sufficient notice of the seizures, the City was under no 
obligation to invite VSC to initiate chapter 47 proceedings.[17] 
III. Declaratory Judgments
            
The City filed a plea to the trial court’s jurisdiction as to several 
declarations requested by VSC.[18]  The trial court denied the plea, 
and the court of appeals affirmed despite the fact that VSC had by then lost its 
license to operate a vehicle storage facility and therefore could no longer 
store the type of vehicles involved in this suit.  The court of appeals 
noted that VSC’s requested declarations were not by their terms limited to nonconsensually-towed vehicles, and on this basis it refused 
to grant the plea.  242 S.W.3d at 597.  This, 
however, conflicts with our rule that a declaratory judgment action may lie only 
where there is a “substantial controversy involving genuine conflict of tangible 
interests.”[19]  Bonham State Bank v. 
Beadle, 907 S.W.2d 465, 467 (Tex. 1995) (internal quotations 
omitted).  But with regard to the sort of vehicles VSC may still 
store, there is no apparent conflict at all, and as such the relief sought is 
highly speculative and theoretical, incapable of settling any actual controversy 
between the parties.  See id.; State ex rel. McKie v. Bullock, 491 S.W.2d 659, 660 (Tex. 1973) 
(holding that there could be no declaratory judgment action where a declaration 
would not settle an actual controversy between the parties).
IV. Conclusion
            
VSC received all of the process to which it was entitled.  A party cannot 
claim a lack of just compensation based on its own failure to invoke a law 
designed to adjudicate such a claim.  We reverse the court of appeals’ 
judgment and render judgment dismissing the case.  Tex. R. App. P. 60.2(c).
 
 
 
                                                                        
_______________________________________
                                                                        
Wallace B. Jefferson
                                                                        
Chief Justice
 
OPINION 
DELIVERED: July 1, 2011
                                                                                    







[1] 
See Tex. Occ. 
Code ch. 2303. A vehicle storage facility is a parking facility that 
is used to store or park at least ten vehicles each year.  Id. 
§ 2303.002(8)(B).  The chapter does not 
regulate vehicles parked with the consent of the owner.  Id. § 2303.003(a).  VSC’s license to operate 
as a vehicle storage facility was revoked sometime after the occurrence of the 
facts that form the basis of this case.

[2] 
The precise total is disputed, with the City 
claiming that 324 vehicles were seized.  In any event, VSC ultimately 
abandoned its claims to 47 of the seized vehicles and another 25 or 27 were 
either not seized or were the result of duplications or inaccuracies in VSC’s 
records.

[3] 
VSC alleges a taking under both the Texas and 
United States Constitutions.  Where the parties have not argued that there 
are any material differences between the state and federal versions of a 
constitutional provision, we typically treat the two clauses as congruent.  
See New Times, Inc. v. Isaacks, 146 S.W.3d 144, 150 (Tex. 2004).

[4] 
See VSC, LLC v. City of Dallas, No. 3:04-CV-1046-D (N.D. Tex. Feb. 23, 2005) (order 
remanding some claims to state court and retaining jurisdiction over 
others).  The federal court retained jurisdiction over VSC’s constitutional 
claims alleging an unlawful search and seizure, as well as its pendent state-law 
tort claims.  See id.  

[5] 
The court of appeals held that the trial court 
abused its discretion in denying the plea with respect to VSC’s claim that the 
City took, damaged, or destroyed VSC’s property for a private purpose.  
242 S.W.3d 584, 596.  VSC does not challenge that 
ruling here.

[6] 
We called for the views of the Solicitor General, 
who submitted a brief on behalf of the State of Texas as amicus 
curiae.

[7] 
Though chapter 47 proceedings are typically 
brought in municipal court, that venue is not exclusive.  See Tex. Code Crim. Proc. 
§ 47.01(d).  Claims under chapter 47 may be brought in the same suit 
as other claims.

[8] 
A chapter 47 proceeding initiated in municipal or 
justice court may be appealed to a county court or statutory county court, where 
they are “governed by the applicable rules of procedure for appeals for civil 
cases in justice courts to a county court or statutory county court.”  
Tex. Code. 
Crim. Proc. 
47.12(b).  Matters appealed to county court are tried 
de novo.  Tex. R. Civ. P. 
574b.

[9] 
The owner of property sold pursuant to chapter 47 
may recover the proceeds of the sale under the same circumstances as may the 
owner of property sold under the abandoned and unclaimed property statute.  
Tex. Code Crim. 
Proc. art. 47.07.  Thus, the real owner must file a claim for the 
proceeds “not later than the 30th day after the date of [the property’s] 
disposition.”  Id. art. 18.17(e). 

[10] We assume 
without deciding that a licensed vehicle storage facility may have a garageman’s lien in a stored vehicle and that a garageman’s lien may exist in stolen property.  See 
Tex. Prop. Code 
§ 70.003(c) (providing for a lien in vehicles “left for care” with a 
garageman).  The City disputes both of these 
contentions.

[11] The dissent 
provides a number of quotations from VSC’s pleadings to argue that VSC did ask 
for chapter 47 relief in the trial court.  While VSC asked to be declared 
an interested party entitled to notice under chapter 47, it pointedly did 
not seek a hearing.  To the contrary, VSC disclaimed any responsibility 
to file under chapter 47 and argued, as it continues to argue here, that it was 
the City’s sole responsibility to seek such hearings.  Likewise, VSC’s 
response to the City’s plea to the jurisdiction focused solely on its takings 
claim—the only claim asserted in its live pleading.  This does not amount 
to a request for chapter 47 relief.  VSC was required to protect its 
alleged property interest by seeking relief under chapter 47.  The statute 
authorized VSC to seek such relief, and the reasons for its failure to do so are 
irrelevant.  Cf. ___ S.W.3d at ___ (suggesting that VSC failed to 
request a hearing because it “did not believe that it could bring a claim under 
Chapter 47").

[12] See Steele 
v. City of Houston, 603 S.W.2d 786, 791 
(Tex. 1980) (“The Constitution itself is the authorization for compensation for 
the destruction of property and is a waiver of governmental immunity for the 
taking, damaging or destruction of property for public use.”).

[13] The dissent 
contends that Williamson County’s state-court litigation requirement does 
not apply here because that decision was based on federalism concerns not 
present in this case. ___ S.W.3d at ___.  We 
believe, though, that the Court’s reasoning has direct relevance.  
Williamson County requires complainants alleging a taking to file inverse 
condemnation suits in state court before bringing suit in federal court.  
Williamson Cnty. Reg’l Planning Comm’n v. Hamilton State Bank, 473 U.S. 172, 186 (1985).  
The Court began with the basic proposition that the Takings Clause only 
prohibits takings without just compensation.  Id. 
at 194.  Citing Ruckelshaus v. Monsanto Co., 467 U.S. 986 
(1984), the Court explained that it had already interpreted this to mean that 
“taking claims against the Federal Government are premature until the property 
owner has availed itself of” remedial statutory procedures.  Williamson 
Cnty., 473 U.S. at 195.  The Court further 
held that a state-court inverse condemnation claim was a 
Ruckelshaus-type remedial procedure, and that a property owner therefore 
could not bring a federal takings claim until he had proceeded in state 
court.  Id. at 195-96.  This second 
holding has been criticized, as it has made it more difficult for property 
owners to bring takings claims against state governments in federal 
courts.  See San Remo Hotel, L.P. v. City & Cnty. of San 
Francisco, 545 U.S. 323, 348 (2005) (Rehnquist, C.J., concurring) (arguing 
that Williamson County’s state-court litigation rule should be 
reconsidered).
                
Our holding today, however, relies only on Williamson County’s primary 
observation that utilization of a remedial scheme for recovery of property 
logically precedes a takings claim.  As the Court acknowledged, this is a 
proposition implicit in the Takings Clause and well-supported by 
precedent.

[14] The Supreme 
Court later explained that the existence of a statutory remedy in Crozier made the government’s taking of property in 
that case constitutionally unobjectionable.  See William Cramp & 
Sons Ship & Engine Bldg. Co. v. Int’l Curtis Marine Turbine Co., 246 
U.S. 28, 44-45 (1918) (“[T]he provisions of the statute affording a right of 
action and compensation were adequate to justify the exercise” of the 
government’s power.).

[15] See also 
Ruckelshaus, 467 U.S. at 1013 n.16 
(holding that a statutory procedure that provides just compensation “nullif[ies] any claim against the 
Government for a taking”).  In Ruckelshaus, Monsanto claimed that 
the Environmental Protection Agency (EPA) had taken without just compensation 
certain trade secrets that it was required to submit during the approval process 
for insecticides under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA).  Id. 
at 998.  The alleged taking occurred when the EPA used some of 
Monsanto’s trade secrets in assessing the permit applications of other 
companies’ insecticides.  Id.  However, under FIFRA, Monsanto 
was entitled to compensation from the companies to whose benefit its trade 
secrets were applied, which it could seek through a statutory arbitration 
process.  Id. at 995.  The Court held 
that Monsanto’s takings claims were unripe because it had not yet arbitrated its 
claims, noting that “[i]f a negotiation or arbitration 
pursuant to [FIFRA] were to yield just compensation . . ., then 
Monsanto would have no claim against the Government for a taking.”  Id. at 1013.

[16] Even if it 
failed to participate in the chapter 47 proceedings, VSC might have had, in 
certain cases, a second post-deprivation option available to it.  See 
Tex. Code Crim. 
Proc. arts. 18.17(e), 47.07.

[17] VSC, having 
notice of the vehicles’ seizure, should have initiated chapter 47 proceedings, 
both to notify the government that it was asserting an interest in the vehicles 
and to determine its interest in them.  VSC failed to do so.  After 
West Covina, federal courts have held that where a claimant fails to take 
advantage of a State’s post-deprivation procedures, that claimant cannot then 
complain of the State’s subsequent disposition of the property.  See, 
e.g., Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 139 (3rd 
Cir. 2010) (affirming summary judgment against the claimant because “he did not 
take advantage of state procedures available to him for the return of his 
property”); Mora v. City of Gaithersburg, 519 F.3d 216, 230 (4th Cir. 
2008) (“Mora has had, and continues to have, notice and an opportunity to be 
heard in Maryland, and he cannot plausibly claim that Maryland’s procedures are 
unfair when he has not tried to avail himself of them.”); McKinney v. Chidley, 87 F. App’x 615, 617 
(9th Cir. 2003) (memo. op.) (affirming summary judgment 
against claimant because he admitted that he did not follow State procedures for 
recovering property).
                
We also note that the dissent’s position on notice could severely hamper law 
enforcement.  We assume for the purposes of this case that VSC does in fact 
have a property interest in its alleged liens on the seized vehicles, although 
the State strenuously disputes this proposition.  But in a case like this, 
where the precise contours of property rights are unclear, it is difficult to 
charge the government with the duty of notice.  The dissent’s rule would 
subject political subdivisions to takings liability in cases in which they did 
not even know property rights existed.  Because VSC’s actual notice was 
sufficient here, however, we need not reach this issue.

[18] VSC sought 
declarations that (1) it was entitled to fees for stolen vehicles, (2) the City 
lacked authority to seize allegedly stolen vehicles from VSC, and (3) VSC was 
entitled to notice and a hearing under chapter 47.

[19] We have 
conflicts jurisdiction over this case based on section 22.225(c) of the 
Government Code as it existed at the time this action was filed, which grants us 
jurisdiction where the court of appeals’ decision would overrule a decision of 
this Court if both had been decided by the same court.  Tex. Natural 
Res. Conservation Comm’n v. White, 46 S.W.3d 864, 
867 (Tex. 2001); see also Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 1.02, 2003 Tex. Gen. Laws 847, 848 (codified 
at Tex. Gov’t Code 
§ 22.225).